Kenny L. WILLIAMS, Appellant,

v.

UNITED STATES, Appellee.

No. 6610.

District of Columbia Court of Appeals.

Argued Feb. 12, 1973.

Decided May 4, 1973.
Rehearing en Banc Denied May 31, 1973.

---

Joseph Paull, Washington, D. C., appointed by this court, for appellant.

Richard L. Beizer, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Raymond Ba-

noun, Asst. U.S. Attys., were on the brief, for appellee.

Before KERN, NEBEKER and PAIR, Associate Judges.

PER CURIAM:

Appellant was convicted of carrying a dangerous weapon [1] (a pistol) and possessing implements of crime,[2] to wit, narcotics paraphernalia, and received consecutive sentences of two-to-six years and six months' imprisonment, respectively. He argues on appeal that (1) the evidence upon which his convictions were based was obtained by an unlawful search by police officers, (2) the trial court prejudiced his defense (a) by questioning him while he was testifying during trial and (b) by instructing the jury generally before any evidence was adduced at trial,[3] and (3) the evidence was insufficient to support his "PIC" conviction.

As to the validity of the search, the testimony at the hearing of appellant's motion to suppress may be summarized as follows. During the early afternoon of January 29, 1972, two police officers on scooter patrol in the vicinity of 14th and T Sts., N.W., observed appellant sitting behind the wheel of an automobile which was blocking a fire hydrant [Tr. 44] and which had a mutilated Virginia inspection sticker on its front windshield.[4] The officers proceeded past the parked auto until they could get clear of the traffic (in preparation to start back in appellant's direction) at which point appellant pulled away from the curb while simultaneously looking in the direction of the officers. [Tr. 22.] Appellant drove past the officers and they followed, ultimately coming as close to him as approximately 25 feet [Tr. 6]. One of the officers then honked his horn to attract appellant's attention in order to direct him to

---

1. D.C.Code 1967, § 22-3204.

2. D.C.Code 1967, § 22-3601.

3. Super.Ct.Cr.R. 30.

4. There was testimony that the "inspection sticker was mutilated by being partly scraped off the window." [Tr. 44.]

stop. At this point, one of the officers observed appellant looking in his rear view mirror and then make a motion with his right hand as if to take something from his waist area and place it under the driver's seat. Appellant did not stop immediately after the officer sounded his horn but continued driving for at least another block. [Tr. 23.] Under these circumstances, a stop to check appellant's license and registration was proper. Palmore v. United States, —— U.S. ——, 93 S.Ct. 1670, 36 L. Ed.2d 342 (1973); Mincy v. District of Columbia, D.C.App., 218 A.2d 507 (1966).

After being stopped and upon request, appellant produced his license and a Virginia registration which was *not* in his name.[5] Appellant told the officer he did not know who owned the auto, a 1964 Chevrolet Malibu, and then said that he had bought it for ten dollars. Appellant, when asked by the officer "what he had put underneath the front seat" [Tr. 33], replied that it was a map, but the officer saw a map on the back seat.[6] The officer reached under the front seat and found a pistol. A search of appellant revealed a small wooden pipe.

█ The trial court denied appellant's suppression motion and we agree. We are of the opinion that (a) the discrepancy between the name on the license and the registration, (b) appellant's failure to know who owned the car, (c) appellant's inherently incredible explanation of how he came to be driving the car, (d) appellant's "furtive movement" upon being honked at by the officers after he had seen them following him, and (e) the mutilated inspection sticker on the car constituted probable cause for a reasonably prudent officer to arrest appellant for unauthorized use of a vehicle. Therefore, the subsequent search was lawful.

█ As to appellant's contentions that the trial court's questioning during trial and general instructions to the jury before the evidence was adduced was improper, we have reviewed the record and find no prejudice to appellant requiring reversal.[7]

█ As to appellant's conviction for possessing implements of crime, to wit, narcotics paraphernalia, the only evidence in the record is (1) the arresting officer's testimony that he seized a small wooden pipe from appellant [Tr. 27, 118, 119; R. 218], and (2) a stipulation by counsel that a forensic chemist who had analyzed the pipe would testify that the pipe "showed the presence of marijuana residue." [Tr. 133.] A small wooden pipe is, of course, not a narcotics kit or even a part thereof, *see* Jones v. United States, D.C.App., 282 A.2d 561 (1971); Crawford v. United States, D.C.App., 278 A.2d 125 (1971); McKoy v. United States, D.C.App., 263 A. 2d 645 (1970). In addition, appellant's possession of such a pipe, without further evidence as to its shape and size and absent evidence as to the nature and significance of the residue in the pipe, does *not* have the "sinister" implication that possession of "implements" and "tools" of crime raises. *See* Rosenberg v. United States, D.C.App., 297 A.2d 763, 765 (1972); McKoy v. United States, *supra* 263 A.2d at

---

5. The officer was unable to make a stolen car check because the computer was down. [Tr. 33.]

6. The testimony of the officer and appellant as to the movement appellant had made and how he had explained this movement *upon being stopped by the officer* was in conflict. The trial court's conclusion that the officers had observed a furtive movement [Tr. 61, 62, 70], indicates that it chose to credit the officer's testimony in this particular aspect of the case.

7. In Singer v. United States, 380 U.S. 24, 38, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965), the Supreme Court pointed out that absent plain error, instruction given to the jury will stand where no timely objection has been interposed. In this case, appellant's attorney specifically agreed to the court giving general instruction prior to the introduction of any evidence. [Tr. 74, 75.] The trial judge instructed on the "function of the court, [and] function of the jury" at the beginning of trial and then gave "the specialized instructions at the end of the case." [Tr. 74.]

651. As we pointed out in Jones v. United States, *supra* 282 A.2d at 563, "Each case [involving the charge of possessing implements of crime] must of course be governed by its own facts". We conclude under the particular circumstances of this case that the evidence was insufficient to support the conviction and the trial court should have granted appellant's motion for judgment of acquittal.

The judgment of conviction for carrying a dangerous weapon is affirmed but the judgment for possessing implements of crime is reversed and the trial court is directed to enter a judgment of acquittal on this charge.

So ordered.