**Gilbert C. FRANEY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11038.**

District of Columbia Court of Appeals.

Argued Nov. 10, 1977.

Decided Feb. 1, 1978.

---

Wallace E. Shipp, Jr., Columbia, Md., appointed by this court, for appellant.

Richard C. Otto, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and John W. Polk, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, NEBEKER and FERREN, Associate Judges.

KERN, Associate Judge.

After a jury trial, appellant and two codefendants were found guilty of first-degree burglary while armed, D.C. Code 1973, §§ 22–1801(a), –3202; first-degree burglary, D.C.Code 1973, § 22–1801(a); armed robbery, D.C.Code 1973, §§ 22–2901,

–3202; robbery, D.C.Code 1973, § 22–2901; and assault with a dangerous weapon, D.C. Code 1973, § 22–502. This appeal followed, presenting the question whether appellant's motion for a judgment of acquittal was properly denied by the trial court on the ground the evidence adduced would permit a reasonable person to find guilt beyond a reasonable doubt. Appellant contends the government's evidence established only his mere presence at the crime scene at the time of the offense and that he rebutted this evidence with a reasonable alternative explanation which negated his participation in the crimes charged. Appellant's contentions are refuted by our examination of the record; consequently, we affirm his convictions for first-degree burglary while armed and for armed robbery. However, since first-degree burglary is a lesser included offense[1] of first-degree burglary while armed, and since robbery and assault with a dangerous weapon are lesser included offenses of armed robbery, the convictions for these three lesser offenses must be vacated. See Taylor v. United States, D.C.App., 324

A.2d 683, 685 (1974); Skinner v. United States, D.C.App., 310 A.2d 231, 233 (1973); and United States v. Johnson, 155 U.S.App. D.C. 28, 29–30, 475 F.2d 1297, 1298–99 (1973) (assault with a dangerous weapon is a lesser included offense of armed robbery).[2]

Appellant's motion for a judgment of acquittal was made and denied at the close of the government's case and again at the close of the presentation of all the evidence. In cases such as this, a defendant who introduces evidence after the denial of his motion for a judgment of acquittal made at the close of the government's case thereby waives that motion and cannot make the ruling the subject of appellate review. In re A.B.H., D.C.App., 343 A.2d 573, 575 (1975); Wesley v. United States, D.C.App., 233 A.2d 514, 516 (1967); Dickson v. United States, D.C.App., 226 A.2d 364, 365–66 (1967); McRae v. United States, D.C.App., 222 A.2d 848, 849 (1966).[3] Although conflicting views exist regarding the validity of the waiver doctrine,[4] we find

1. In Hall v. United States, D.C.App., 343 A.2d 35, 38 (1975), this court stated:

 Courts in this jurisdiction have, however, vacated convictions for lesser included crimes in cases of multiple count convictions when this issue is raised for the first time on appeal. [Citations omitted.]

2. One offense is necessarily included in another if it is impossible to commit the greater without also committing the lesser; that is, the lesser offense consists entirely of some, but not all of the elements of the greater offense. Hall v. United States, supra at 38 (assault is not a lesser included offense of obstruction of justice); Pendergrast v. United States, D.C.App., 332 A.2d 919, 924 (1975) (manslaughter is a lesser included offense of second-degree murder); Crosby v. United States, 119 U.S.App. D.C. 244, 245, 339 F.2d 743, 744 (1964) (assault with a dangerous weapon is not a lesser included offense of robbery).

 When a greater and lesser included offense are charged, the proper course is for the trial judge to instruct the jury to consider first the greater offense and then consider the lesser offense only if a reasonable doubt exists concerning the accused's guilt of the greater offense. Fuller v. United States, 132 U.S.App. D.C. 264, 292, 407 F.2d 1199, 1227 (1968) (en banc), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969) (second-degree murder is

a lesser included offense of first-degree murder).

3. We note that in each of those cases, however, the prosecution had in fact established by its own evidence a prima facie case. Thus, these decisions are in accord with Chief Justice (then Circuit Judge) Burger's observation that:

 [a]ppellant's testimony [following the denial of his motion for a judgment of acquittal] could [not] be relied upon by the trial court, or by a reviewing court, in evaluating the sufficiency of the Government's case against a challenge by motion for a directed verdict of acquittal. To draw the homely analogy, evidence introduced by an accused in his own defense cannot give life to a "dead horse," but it can invigorate a weak one. [Thompson v. United States, 132 U.S.App. D.C. 38, 40, 405 F.2d 1106, 1108 (1968).]

4. Although the validity of the waiver doctrine has been questioned, it remains the majority view among the federal circuit courts of appeal. See 2 Wright, Fed.Practice and Procedure, Criminal § 462 et seq., and the cases cited therein. In a dissent in Maffei v. United States, 450 F.2d 928 (6th Cir.), cert. denied, 406 U.S. 938, 92 S.Ct. 1789, 32 L.Ed.2d 138 (1972), Justice Douglas pointed out (at 406 U.S. 938, 92 S.Ct. 1789, 32 L.Ed.2d 138), that the federal circuit courts were divided on the issue whether a defendant who presents evidence in his

that it has been sanctioned, at least in dictum, by the Supreme Court:

> [A] defendant whose motion for acquittal at the close of the Government's case is denied must decide whether to stand on his motion or put on a defense, with the risk that in so doing he will bolster the Government case enough for it to support a verdict of guilty. [*McGautha v. California,* 402 U.S. 183, 215, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711 (1971), *reh. denied,* 406 U.S. 978, 92 S.Ct. 2407, 32 L.Ed.2d 677 (1972).]

Consequently, it is the denial of appellant's motion for a judgment of acquittal made at the close of all the evidence that is the proper subject of our scrutiny, and in assaying the propriety of this ruling, we may consider its sufficiency in the light of *all* the evidence introduced. *In re A.B.H., supra* at 575; *Dickson v. United States, supra* at 366.[5]

 Super.Ct.Cr.R. 29(a) establishes the standard that a trial judge shall direct acquittal ". . . if the evidence is insufficient to sustain a conviction." This standard requires that to "withstand a motion for a judgment of acquittal, the government must produce only that quantum of evidence by which a reasonable person could find guilt beyond a reasonable doubt." *Williams v. United States,* D.C. App., 357 A.2d 865, 867 (1976).[6] In its evaluation of a motion for acquittal, the trial court must view the evidence in a light most favorable to the government, making allowance for the factfinder's right to determine the credibility of witnesses and draw justifiable inferences from their testimony. *Williams v. United States, supra* at 867. *Smith v. United States,* D.C.App., 343 A.2d 40, 42 (1975); *Crawley v. United States,* D.C.App., 320 A.2d 309, 312 (1974); *Payne v. United States,* D.C.App., 294 A.2d 501, 502 (1972). Similarly, an appellate court must consider the evidence in a light most favorable to the government when

---

behalf thereby waives any error in a prior denial of a motion for acquittal made at the conclusion of the government's case. Although Justice Douglas refers to *Cephus v. United States,* 117 U.S.App.D.C. 15, 324 F.2d 893 (1963), that decision is not square authority for the proposition that presentation of a defense is not a waiver; instead, the decision is expressly limited to the situation where after the prosecution rests its case, a defendant introduces evidence to rebut damaging testimony by his codefendant:

> Nevertheless, we need not here question the *entire* waiver doctrine in criminal cases. We need only question its application based upon the defendant's response to damaging testimony of a co-defendant testifying on his own behalf. [*Cephus v. United States, supra* at 19, 324 F.2d at 897; emphasis added.]

**5.** The District of Columbia circuit again applied the exception to the waiver rule it had carved out in *Cephus* for a multiple-defendant situation in *Franklin v. United States,* 117 U.S.App. D.C. 331, 330 F.2d 205 (1964). In 1967 that court extended its exception to the waiver rule to encompass the situation where a defendant unsuccessfully seeks a judgment of acquittal at the conclusion of the government's case on first-degree murder and then presents evidence in his own defense. *Austin v. United States,* 127 U.S.App.D.C. 180, 382 F.2d 129 (1967); *see Belton v. United States,* 127 U.S.App.D.C. 201, 382 F.2d 150 (1967). In 1971 the circuit court appeared to adopt the *Cephus* exception to the waiver rule for a one-defendant non-homicide

case, *United States v. Bethea,* 143 U.S.App. D.C. 68, 442 F.2d 790 (1971); *see Powell v. United States* 135 U.S.App.D.C. 254, 418 F.2d 470 (1969) (dictum), but such a broadening in 1971 of its earlier exception to the waiver rule is not binding upon this court. *M. A. P. v. Ryan,* D.C.App., 285 A.2d 310, 312 (1971).

**6.** The most widely accepted test applied in passing on motions for a judgment of acquittal is found in *Curley v. United States,* 81 U.S.App. D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed.2d 1850 (1947):

> The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter.

reviewing the denial of a motion for a judgment of acquittal. *Williams v. United States, supra* at 867; *Smith v. United States, supra* at 42; *Crawley v. United States, supra* at 312. In applying these standards, no distinction is made between direct and circumstantial evidence. *Calhoun v. United States,* D.C.App., 369 A.2d 605, 607 (1977); *United States v. Fench,* 152 U.S.App.D.C. 325, 333, 470 F.2d 1234, 1242 (1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973).

## PROSECUTION EVIDENCE

Evidence adduced by the government indicated that at approximately 11:00 p.m. two men and one woman broke into Alfred Johnson's basement apartment at 1638 Sixth Street, N.W. One of the men was armed with either a sawed-off rifle or shotgun. The intruders ordered Johnson to cover his head with a pillow and although he complied, he remained able to see the intruders as they searched his room for valuables. The trio took some cash, several bottles of Johnson's heart medicine, a pill bottle filled with pennies, and departed through the backdoor.

Meanwhile, a police car on patrol in the immediate vicinity was flagged down by a passing motorist who reported that a burglary was in progress at Johnson's apartment. The police arrived at the scene immediately, and were directed to the rear of the premises by a next door neighbor. The police rushed to the rear of the building and found defendants Smith and Walker in the backyard of 1638 Sixth Street, apparently trying to climb Johnson's fence and escape via an alleyway. Smith and Walker were apprehended three or four feet from the rear door of Johnson's apartment; *i. e.,* on the route taken by the three intruders after the robbery. A sawed-off shotgun was found outside the fence a few feet away from Walker and Smith.[7] No useable fingerprints were taken from the shotgun. When captured, Walker falsely exclaimed: "Don't shoot officer, this is my uncle's house."[8] Immediately after Smith and Walker were captured in Johnson's backyard appellant was found crouching in the darkened rear porch of 1636 Sixth Street, the premises adjacent to the scene of the crime. During a subsequent search, prescription bottles bearing Johnson's name and a vial of pennies were found in the possession of defendant Smith.[9] At the time of their arrest, Johnson identified appellant's codefendants as two of the three intruders who had forcibly entered his apartment and robbed him minutes before; however, appellant was not shown to Johnson for identification purposes that evening. At trial, Johnson, age 72, was unable to identify any of the three defendants as his assailants.

## DEFENSE EVIDENCE

Following the denial of their respective motions for a judgment of acquittal, appellant and codefendant Walker testified in their defense. Walker stated that at about 11:00 on the evening of April 16, 1975, he and codefendant Smith were walking toward Sixth Street in order to buy drugs. On the way, appellant joined them and asked Smith to purchase drugs for him as well. Walker and appellant were acquaintances who had previously taken drugs together. Appellant gave Smith $20 with which to make his purchase. Upon their arrival at 1638 Sixth Street, Walker and

---

7. Because of the height of the fence and the location of the shotgun when found by the police, a jury might reasonably infer that this was the weapon used in the robbery and that *one of the intruders dropped the weapon over the fence before attempting to climb it himself.* Evidence introduced at trial indicated that the rear boundary of 1638 Sixth Street was enclosed by a seven foot fence and that the codefendants were arrested while trying to climb a fence at least four feet in height that ran along the side of the premises. The gate to this fence was locked.

8. The robbery victim denied that he was Walker's uncle and Walker testified at trial that Johnson was not related to him.

9. The complainant was unable to positively identify the vial of pennies as his or identify the sawed-off shotgun as the weapon employed in the robbery.

Smith entered the building first. Appellant waited outside for a short time and then entered the building.[10]

Walker and appellant both testified that they: (1) entered Johnson's apartment, (2) saw evidence of a forcible entry, (3) called out in an effort to locate the occupant, but received no answer, and then (4) fled via the back door when the police arrived. Appellant testified that he followed the same escape route as the other codefendants, but that he was able to scale the fence and hide in the adjacent building. Appellant also testified that he saw no one, other than the codefendants, at the scene of the crime.

Appellant's explanation for his presence at Johnson's apartment at virtually the moment the crimes were committed was that he was a police informant who was then engaged in identifying the purveyors of illicit drugs. Appellant's role as an informant was verified by a police detective's testimony at trial. However, there was no testimony that appellant was assigned to investigate possible illegal drug sales at Johnson's apartment. In fact, appellant's practice was to work without specific assignments from the police and make contact only when he had acquired useful information.

We think appellant's contention that insufficient evidence was adduced at trial which would permit a finding of guilt beyond a reasonable doubt is disposed of by *Johnson v. United States,* D.C.App., 293 A.2d 269 (1972). In *Johnson,* a burglary occurred in the early morning when an intruder entered the rear porch of a rowhouse and shined a flashlight into the house's interior. The homeowner telephoned the police who arrived at the scene ten minutes later. Once the police arrived, the homeowner turned on the lights and rushed downstairs. Both the homeowner and the police heard the porch door slam shut. *Id.* at 270. During a search of the area, the accused was found hiding at the bottom of a stairwell in an adjacent house. An exam-

ination of the accused's clothing uncovered a pair of gloves, a flashlight and a screwdriver, the accoutrements of a burglar. No other person was encountered during the police search of the area. This court concluded that there was ample evidence to justify a finding of guilt. The numerous factual similarities between the instant case and *Johnson* require a similar result: (1) the police arrived at the scene while the crime was in progress or just completed, (2) the police sealed off the area upon their arrival, (3) no other suspicious persons were encountered during the police search, (4) physical evidence linking the accused to the crime were recovered, and (5) the accused was apprehended, after an unsuccessful flight and concealment, near the scene of the crime. In this case, the evidence places appellant at the scene of the crime at virtually the moment of its occurrence, in the company of two persons who were identified as its perpetrators; items of the victim's personal property taken during the armed robbery were found in the possession of one of appellant's companions and a sawed-off shotgun was found a few feet from appellant's codefendants when they were arrested. Moreover, appellant admits to being present in the victim's apartment when the police arrived.

 In light of appellant's admission of his entry into Johnson's apartment with a man and a woman later identified as two of the three perpetrators of the crime, his subsequent flight along the escape route followed by the intruders, his attempted concealment near the scene of the crime and his explanation of the events surrounding his arrest which the jury apparently found unpersuasive, we conclude, after viewing this evidence in a manner most favorable to the government, that the trial court's denial of appellant's motion for a judgment of acquittal made at the close of all the evidence, was not erroneous. As a result, appellant's conviction of first-degree burglary while armed and armed robbery

---

**10.** Walker testified that appellant waited outside the building for thirty seconds before following him and Smith into Johnson's apart-

ment. Appellant testified that he waited two or three minutes before entering the apartment.

are affirmed. However, as the prosecution concedes, appellant's three convictions for lesser included offenses, *viz.,* first-degree burglary, robbery, and assault with a dangerous weapon must be vacated.

We affirm the judgment of conviction for burglary while armed and armed robbery; we vacate the convictions of appellant for first-degree burglary, robbery and assault with a dangerous weapon.

*So ordered.*