**Anthony D. DUMAS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 82–1506.**

District of Columbia Court of Appeals.

Submitted July 5, 1984.

Decided Oct. 4, 1984.

---

William T. Morrison, Washington, D.C., was on brief, for appellant.

Joseph E. diGenova, U.S. Atty., Michael W. Farrell, and Kenneth W. Cowgill, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MACK, FERREN and ROGERS, Associate Judges.

ROGERS, Associate Judge:

The issue in this appeal is whether a defendant waives his right to challenge the sufficiency of the government's case-in-chief on appeal by presenting evidence in response to damaging testimony of his codefendant which does not cure any deficiency in the government's case. Appellant and codefendant McRae were jointly tried by a jury for attempted second degree burglary, D.C.Code §§ 22–103, –1801 (1981), petty larceny, id. § 22–2202, and receiving stolen property, id. § 22–2205. Appellant was convicted of petty larceny and McRae was acquitted.

Appellant contends the government's case-in-chief was insufficient to support his conviction, and thus the trial court erred in denying his mid-trial motion for judgment of acquittal. The government's case-in-chief consisted of the testimony of various police officers and the owner of the house that was burglarized and from which a gas stove had been removed. Several police officers responded to a radio run broadcast for a burglary in progress at 1232 Half Street, S.E. on March 24, 1982, between 8:20 and 8:30 p.m. When the first officer arrived at the Half Street address, he noticed that the back door of the house had been kicked in. Based on his investigation, he broadcast a lookout for a dark pickup truck with a white camper near New Jersey Avenue and K Street, S.E. with a stove in the back. Officer Manning saw the truck and a large white stove in the back of the truck. Four men were near the truck as Manning approached: McRae was standing near the open driver's door, appellant was standing near the open passenger door, a thin man was approaching the truck, and an older husky man was eight or nine feet from the truck.

Officer Manning testified that McRae told him that he had gone to the Half Street address with the older husky man (who had walked away as the police arrived and was never apprehended) and "one of the other two gentlemen who were there" (appellant and the thin man).[1] McRae told him that the husky man and the other man went inside the house and brought the stove out and put it in McRae's truck. McRae paid the husky man $80 for the stove. The police officer then testified that the thin man was arrested on an unrelated fugitive warrant and that McRae told him that the thin man was not the one who had been involved in the crime. Officer Manning also testified that appellant, who was wearing gloves, stated that the police would not "find his fingerprints on any-

---

1. Before voir dire, McRae's attorney notified the court that the defendants were likely to present conflicting defenses: McRae would claim appellant took the stove while appellant would contend he was with others at the relevant time. No motion for severance was made.

Before opening argument, the prosecutor told the court that McRae's statements to the police at the scene would be introduced in the government's case-in-chief as evidence against McRae, and alerted the court to the potential *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) problem. Appellant's counsel requested that the statements not be used in the government's case-in-chief because they were inadmissible against appellant and highly prejudicial. The court ruled it would allow testimony about the statements if the government instructed its witness to sanitize them so that there was no reference to appellant.

thing or anyplace," and that he had been at his girlfriend's earlier in the evening.

■ This evidence was insufficient to support appellant's conviction and therefore his motion for judgment of acquittal at the close of the government's case should have been granted. Super.Ct.Crim.R. 29(a). *Frendak v. United States,* 408 A.2d 364, 370 (D.C.1979). The principal evidence tending to link appellant to the burglary, and thus the petty larceny of which he was convicted, is the hearsay statements of McRae about which Officer Manning testified. Setting aside any *Bruton* problems,[2] these statements by McRae were out-of-court statements offered for the truth of the matter asserted, namely, that appellant accompanied the husky man and removed the stove from the house. While they were admissible against McRae as admissions of a party opponent, *see* F.R.E. 801(d)(2), they were inadmissible against appellant under any exception to the rule against hearsay. *See Carpenter v. United States,* 430 A.2d 496, 500 (D.C.) (en banc) (one codefendant's out-of-court confession is inadmissible against codefendant; it constitutes inadmissible hearsay and has no legitimate probative force against the non-declarant codefendant), *cert. denied,* 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981) and cases cited therein. Therefore, the trial court could not properly have considered McRae's statements in evaluating the sufficiency of the evidence.

Without McRae's statements, the only evidence linking appellant to the crime was his presence at the scene of the arrest near McRae's truck which contained stolen merchandise, the fact that he was wearing gloves, and his statement that the police would not find his fingerprints. Mere presence at the scene of an offense, even with knowledge that a crime has been committed, is insufficient to support a conviction.[3] Appellant was not observed engaging in any conduct which would indicate that he was encouraging or assisting in the commission of a crime, and did not flee upon the arrival of the police.[4] His gloves were never described, and nondescript gloves are hardly grounds for an inference of guilt.[5] Similarly, appellant's statement is ambiguous at best.

■ The government contends, however, that appellant has waived his right to challenge the sufficiency of the government's case-in-chief by electing to put on a defense and to testify himself, and must therefore challenge the sufficiency of all of the evidence. *See Franey v. United States,* 382 A.2d 1019, 1021–22 (D.C.1978); *In re A.B.H.,* 343 A.2d 573, 575 (D.C.1975).[6] The "waiver doctrine" provides that when a defendant elects to introduce evidence af-

---

**2.** *See infra* note 9.

**3.** *Quarles v. United States,* 308 A.2d 773, 774 (D.C.1973) (presence at scene of crime alone insufficient, "a culpable purpose is essential") (quoting *Bailey v. United States,* 135 U.S.App. D.C. 95, 98, 416 F.2d 1110, 1113 (1969)); *Corbin v. United States,* 237 A.2d 466, 467 (D.C.1968) (presence alone at the scene of a crime, without a showing of a prior conspiracy or design to assist in the commission of the crime, is insufficient to support a finding of guilt). *See Hill v. District of Columbia,* 264 A.2d 145 (D.C.1970) (evidence that weapon found in car owned by defendant's sister, for which he had registration, but in which another person was seated at time of arrest, insufficient to support conviction of possession of the weapon).

**4.** *Compare Montgomery v. United States,* 384 A.2d 655, 660 (D.C.1978) (presence at scene while codefendant was shoplifting combined with defendant's actions in constantly looking around as if he were a lookout, sufficient for conviction as aider and abettor); *see Corbin, supra* note 3, 237 A.2d at 467 (although admissible on the question of guilt or consciousness of guilt, evidence of flight does not create a legal presumption of guilt).

**5.** *See Williams v. United States,* 304 A.2d 287, 289 (D.C.1973) (possession of a small wooden pipe, without further evidence as to its shape or size and without evidence of significance of residue in the pipe, insufficient to support conviction of possession of implements of crime).

**6.** The government does not state in its brief how, when considering all the evidence, it is sufficient. We are satisfied that if the testimony of the codefendant McRae is considered, there is sufficient evidence to support the guilty verdict.

ter the government has rested and a defense motion for judgment of acquittal has been denied, he waives his right to appellate review of the government's case. Thus, he runs the risk that his case will incidentally fill in the gaps left in the government's case. *Cephus v. United States,* 117 U.S.App.D.C. 15, 18, 324 F.2d 893, 896 (1963). This court continues to apply the waiver doctrine. *See Frendak, supra,* 408 A.2d at 370 n. 7; *Franey, supra,* 382 A.2d at 1021; *In re A.B.H., supra,* 343 A.2d at 575 and cases cited therein. However, in *Cephus, supra,* 117 U.S. App.D.C. at 19, 324 F.2d at 897, the District of Columbia Circuit held that when a defendant introduces testimony as a response to damaging testimony by a codefendant he is not deemed to have waived his challenge to the sufficiency of the government's evidence. Although this court has questioned the Circuit Court's decisions limiting the application of the waiver doctrine,[7] *Cephus* and the cases following it, *e.g., Franklin v. United States,* 117 U.S.App.D.C. 331, 330 F.2d 205 (1964), have not been overruled by an en banc decision of this court. They are therefore binding precedent which we must follow. *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971). *See Franey, supra,* 382 A.2d at 1021 n. 4 (implicitly noting the continued vitality of *Cephus* ).

In *Cephus,* the codefendant's testimony tended to inculpate Cephus while exculpating himself. As a response to that testimony, Cephus presented a defense which cured a deficiency in the government's case. The court stated:

[W]e need not here question the entire waiver doctrine in criminal cases. We need only question its application based upon the defendant's response to damaging testimony of a co-defendant testifying on his own behalf. *It is clear that if the defendant himself rests on the Government's evidence, the co-defendant's testimony does not waive the defendant's motion. It is also clear that*

*the defendant's own evidence, introduced in response to the co-defendant's testimony, does not waive the motion if it adds nothing to the Government's case.* The waiver question arises only where, as here, the defendant himself, in seeking to explain, or rebut the codefendant's testimony, introduces evidence which overshoots that mark and tends to cure a deficiency in the Government's case. We think the waiver doctrine cannot fairly be applied in this situation. *Cephus, supra,* 117 U.S.App.D.C. at 19, 324 F.2d at 897 (footnotes omitted) (emphasis added). The instant case falls squarely within the court's holding in *Cephus.* The court's statement that a defendant does not waive the right to challenge the government's case when he is induced to present evidence by the codefendant's testimony, where the defendant's evidence does not add anything to the government's case, reflects precisely the situation in this case.

The codefendant McRae presented his evidence first, consisting of his testimony and that of an investigator, who testified about unsuccessful attempts to subpoena the husky man. McRae's testimony was essentially along the lines of his statement to the police when he was arrested. He testified that a husky man offered to sell him a used gas range for $80. The man returned later the same day with appellant and the three of them went to the house on Half Street. McRae let the others out in front of 1232 Half Street and drove his truck to the back of the house where the husky man and appellant loaded the stove onto his truck. McRae claimed he did not think the stove was stolen until the police arrived.

Appellant's evidence consisted of his own testimony and the testimony of two witnesses who were with him at 8:30 p.m. on March 24, 1982, and did not see him with a stove. Jones testified that appellant had been with him all day until 8:30 that night and Gipson testified that he first saw appellant at 8:30 p.m. when he got out of

7. *See Frendak, supra,* 408 A.2d at 370, n. 7; *Franey, supra,* 382 A.2d at 1022 n. 5 (noting that

*United States v. Bethea,* 143 U.S.App.D.C. 68, 442 F.2d 790 (1971) is not binding on this court).

Jones' car. Appellant testified that what McRae said about his being involved in the burglary was untrue and that he was only at the scene of the arrest talking to McRae and others about cars when they were arrested. Appellant's testimony and his alibi defense thus impeached the codefendant's testimony but did not cure the deficiency in the government's proof. The only evidence that supplied the deficiency in the government's case was codefendant McRae's testimony. The waiver doctrine is inapplicable in this situation. *See also, Townsley v. United States,* 236 A.2d 63, 64 n. 1 (D.C. 1967) ("Because appellant's testimony did not supplement the prosecution's case, we are not presented with the kind of problem to which *Cephus v. United States,* 117 U.S.App.D.C. 15, 324 F.2d 893 (1963) is addressed.... The case as it went to the trier of fact after appellant's testimony was in essentially the same posture as when the Government completed its case-in-chief").

To permit application of the waiver doctrine in the situation presented in this case would undermine the requirement that the government prove its case beyond a reasonable doubt. The government cannot force codefendants to testify against each other as part of the government's case-in-chief because each is protected by the privilege against self-incrimination. Yet, if the government, as in the instant case, is permitted to let one codefendant make its case against the other, the other defendant faces a dilemma: he must either introduce no evidence (and risk almost certain conviction based on the codefendant's incriminating testimony) in the hope that an appellate court will agree that the government's case was insufficient, or introduce evidence to rebut the codefendant's testimony but forever waive review of the sufficiency of the government's case-in-chief. For the well articulated reasons set forth in *Cephus,* such a choice is not in keeping with the burden of proof in our adversarial system for it permits the government to

> use the coercive power of the co-defendant's testimony as part of its case-in-chief, even though the Government was prohibited from calling the co-defendant to testify for the prosecution.

*Cephus, supra,* 117 U.S.App.D.C. at 20, 324 F.2d at 898.[8] *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) (government must prove every element of offense beyond a reasonable doubt); *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979) ("*Winship* presupposes as an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense"). Under Super.Ct.Crim.R. 29(a), a judgment of acquittal is mandatory at the close of the government's case-in-chief if the government's evidence is insufficient. *Cephus, supra,* 117 U.S.App.D.C. at 19, 324 F.2d at 897 ("[t]he trial judge has no discretion to reserve his ruling in the expectation that the defendant will testify").

During the argument on appellant's motion for judgment of acquittal at the close of the government's case-in-chief, the prosecutor relied on the officer's hearsay testi-

---

**8.** In *Cephus, supra,* 117 U.S.App.D.C. at 17, 324 F.2d at 895, the Circuit Court noted:

> One of the greatest safeguards for the individual under our system of criminal justice is the requirement that the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense.
>
> Ours is the accusatorial as opposed to the inquisitorial system. * * * Under our system society carries the burden of proving its charge against the accused not out of his own mouth. It must establish its case, not by interrogation of the accused even under judicial safeguards, but by evidence independently secured through skillful investigation. [*Watts v. Indiana,* 338 U.S. 49, 54, 69 S.Ct. 1347, 1350, 93 L.Ed. 1801 (1949) (Frankfurter, J.)].

mony[9] and stated, "we believe by the end of the trial that there will be strong evidence connecting [appellant] to the crimes." After further argument, during which appellant's attorney objected to the hearsay evidence, the court denied the motion stating, "I think it is very, very thin but I'll give the Government the benefit of the doubt and overrule the motion, but you better get some evidence in."[10] If the government needs the testimony of the codefendant in order to make a sufficient case against the defendant, it has a variety of options: it can try the codefendant first and then call him to testify in a later trial of the defendant, or it can offer the codefendant a favorable plea agreement in exchange for his testimony, or failing that, it can grant immunity to the codefendant for his testimony.

The government contends, nevertheless, that *Cephus* is inapplicable because appellant himself testified, whereas in *Cephus* the defendant did not. Appellant was, argues the government, not content "to explain, impeach or rebut the codefendant's testimony," *Cephus, supra,* 117 U.S.App. D.C. at 19, 324 F.2d at 897, but chose also to put his own credibility in issue and per-

sonally deny complicity. Brief for Appellee at 10.[11] The government cites *United States v. Belt, supra* note 11, 574 F.2d at 1237, for the proposition that *Cephus* is limited to cross-examination and third party testimony elicited by a defendant which are directed solely to the codefendant's credibility and character. But in *Belt,* since the defendant did not testify, the court had no reason to examine the rationale of *Cephus* where a defendant testifies and adds nothing to cure the deficiencies in the government's case-in-chief. Thus, *Belt* does not limit *Cephus* but merely applies the law to the facts of that case.

The government also argues that appellant's trial strategy was set before trial and was not merely a reaction to the codefendant's testimony. It notes that his decision to call witnesses on his behalf was done as early as voir dire and was restated before the government completed its case-in-chief.[12] While appellant's counsel was aware, before voir dire, that inconsistent defenses would be presented and that McRae would testify against appellant, *see supra* note 1, we will not speculate whether appellant might have rested after the

---

**9.** Had the hearsay statement of McRae been properly sanitized in accordance with *Carpenter, supra,* 430 A.2d at 501–05, the statement would not have implicated appellant, and therefore the government could not have used it to buttress its case. *See id.* at 505 & n. 15 (to properly sanitize statement, all references to non-declarant codefendant must be deleted, including "references which, when placed in conjunction with the redacted statement, make it clear the deleted portions or names refer to codefendant"). This was not done in the instant case since the officer's hearsay testimony referred to "one of the other gentlemen standing there" whom he had already identified as appellant and the thin man. There was a clear violation of the rule in *Carpenter,* that the statements of the codefendant may not be used to implicate the other codefendant, when the officer testified that McRae told him that the thin man was not involved.

**10.** *See Johnson v. United States,* 398 A.2d 354, 361, 368 (D.C.1979) (in situation where codefendant's testimony implicated other codefendants, trial court erred by failing to exercise its discretion in denying severance and ruling that "that's why you prosecute two people caught in

the automobile at the same time. One hangs the other").

**11.** *See Jenkins v. United States,* 146 A.2d 444, 447 (D.C.1958) (where defendant did not testify but offered other witnesses on his behalf, the court held the motion for judgment of acquittal denied at close of government's case, and not renewed at close of all evidence, was waived, but evidence reviewed anyway; government's evidence held to be sufficient). Other cases do not always specify if the defendant took the stand or merely produced witnesses. *See* cases cited in *In re A.B.H., supra,* 343 A.2d at 575; *Franklin, supra,* 117 U.S.App.D.C. 331, 330 F.2d 205; *United States v. Belt,* 574 F.2d 1234, 1236 n. 7 (5th Cir.1978).

**12.** The government cites *United States v. Fusaro,* 708 F.2d 17, 24 (1st Cir.) (defense was not merely a response to the codefendant's testimony), *cert. denied,* —— U.S. ——, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983). But in *Fusaro,* the court noted that the appellant did not contend that the government's case-in-chief was insufficient.

government's case had McRae not testified. The fact that appellant's counsel introduced the alibi witnesses during voir dire is probative only of the fact that he was prepared to present evidence if it became necessary. Furthermore, the government's argument does not directly address either the *Cephus* holding that the waiver doctrine is inapplicable when the defendant's defense does not add anything to the government's case-in-chief, or its underlying rationale, *see supra* note 8.

Accordingly, the judgment of conviction is reversed and the case is remanded with instructions to enter a judgment of acquittal.

*Reversed.*