Douglas M. WRIGHT, Appellant,

v.

UNITED STATES, Appellee.

Nos. 84–516, 84–608.

District of Columbia Court of Appeals.

Argued Feb. 5, 1986.
Decided Aug. 5, 1986.

Thomas Dyson, with whom John A. Shorter, Jr., Washington, D.C., was on brief, for appellant.

Mary Ellen Abrecht, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before FERREN, BELSON, and STEAD-MAN, Associate Judges.

FERREN, Associate Judge:

■ Appellant's first trial resulted in a hung jury. After a second trial, the jury convicted appellant of two counts of first-degree, felony murder while armed, D.C. Code §§ 22–2401, –3202 (1981), two counts of attempted robbery while armed, *id.* §§ 22–2902, –3202, and one count of carrying a pistol without a license, *id.* § 22–3204. On appeal, he challenges the sufficiency of the evidence presented against him at the first trial. He also claims violation of his Sixth Amendment right to a speedy trial. As to the second trial, appellant contends the court erred in admitting police officers' testimony about an eyewitness's extrajudicial identifications. He also asserts the trial court erred in allowing the prosecutor to cross-examine a defense witness improperly. We affirm as to these allegations of error, but we remand to vacate one felony murder conviction and to reinstate, and impose sentence for, an attempted robbery-while-armed conviction vacated by the trial court.[1]

## I.

According to the government's evidence at the second trial, Robert Bush was shot in the chest and killed while selling preludin pills at the corner of Martin Luther King Avenue and Talbert Street, S.E. between 7:00 and 8:00 p.m. on October 14, 1982. Bush and his common-law wife, Sharon Leach, had entered the area with ten pills, most of which she held, along with the money, at Hilda's Beauty Parlor located nearby.

Robert Triplett saw Bush, an acquaintance, on the corner. Bush gave Triplett some money for food; Triplett later returned with two boxes of chicken. As they stood at the corner talking and eating, two men came up behind them. One shoved Triplett, face-forward, against a wall, placed a hard object in his back, and went through his pockets. Bush stood two to three feet away from Triplett on his right. Triplett heard arguing and scuffling and then shots. Triplett turned his head and "caught a glimpse of the other person with the gun in his hand." He looked at him for about seven seconds, noticing his face, build, and clothes. Triplett claimed the lighting conditions were good. He identi-

---

1. Appellant was convicted on two counts of felony murder for killing one person, Robert Bush. He received concurrent sentences of twenty years to life in prison for each count. The trial court accordingly concluded that the two convictions for attempted robbery while armed merged into those for felony murder. *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Finally, the court sentenced appellant to one year in prison for carrying a pistol without a license, to be served consecutively to the sentences for murder.

We have stated that "where one killing is involved, and the government advances alternate theories of felony murder based upon more than one underlying felony, the accused may not be convicted of more than one felony murder." *Garris v. United States,* 465 A.2d 817, 823 (D.C.1983) (underlying felonies of robbery and larceny). In the present case, the two underlying felonies were the separate attempted robberies while armed of Robert Bush and Robert Triplett. We therefore must remand (as the government acknowledges) for the trial court to vacate one felony murder conviction and to reinstate and impose sentence for the attempted robbery-while-armed conviction which no longer is merged into the now-vacated felony murder conviction and does not underlie the felony murder conviction that remains. *See id.; Harling v. United States,* 460 A.2d 571, 573–74 (D.C. 1983).

fied appellant from a lineup photo and in court as the gunman he had seen scuffling with Bush that night.

Sometime during the afternoon or evening of October 14, 1982, Sidney Tinney heard shots from where he stood at Tony's Barber Shop, fifteen to twenty feet from the corner of Martin Luther King Avenue and Talbert. Tinney turned around and saw Bush, whom he had seen on the corner before, "shoving someone"—the man Tinney thought he had seen doing the shooting. Initially, Tinney had seen the side of the gunman's face, but the gunman ran in Tinney's direction, firing the gun, and Tinney faced him directly. A bullet passed through Tinney's pant leg.

Although Tinney did not want to get involved, he eventually told a detective (and the grand jury) that appellant, whom he had picked out from an array of photographs, was the man who had shot Bush. Moreover, Tinney, as well as Triplett, identified appellant as the gunman from a photograph of a lineup. Tinney had refused to testify at the first trial. Facing contempt charges, he agreed to testify truthfully at the second trial if the government dropped the contempt case.

At trial, however, Tinney insisted that appellant did not look like the man he had seen with the gun after the shooting. The court accordingly permitted the prosecutor, who claimed surprise, to impeach Tinney with his prior identifications, including his grand jury testimony. The court also permitted the prosecutor to present testimony by two detectives who had witnessed Tinney's prior identifications of appellant. After Tinney's impeachment, as well as after both sides had rested, the court instructed the jury to consider Tinney's prior identifications only for the purpose of evaluating the truthfulness of Tinney's trial testimony, not for the purpose of "establishing the truth of any fact contained in that [prior] statement."

Appellant testified on his own behalf and denied the offenses. He said that on the day in question, he was at the Congress Park Shopping Center on Savannah Street, S.E., between 12th and 13th Streets from about 1:30 or 2:00 p.m. until around 8:00 p.m. Two defense witnesses confirmed that appellant had been at the shopping center that day and that one of the witnesses had driven appellant home around 8:00 p.m.

Another defense witness, appellant's friend Mavis Belt, testified that she had been near the scene of the shooting and had seen the side of the gunman's face. Although she could not see him very well, she did not think the man looked like appellant because the gunman was younger and the side of his face had no hair.[2] Cheryl Jackson also testified for the defense, stating that she had seen two men running from the scene of the shooting but did not think either one was appellant, whom she knew. Jackson admitted, however, that both she and Mavis Belt had been drinking Colt 45 beer and Thunderbird wine before the shooting.

## II.

Appellant challenges his convictions after the second trial on the ground that the court at his first trial, which ended in a hung jury, had erroneously denied his motion for judgment of acquittal.

## A.

After *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), several federal circuit courts of appeal entertained such a challenge, "rely[ing] upon or at least assum[ing] the existence of a double jeopardy ground for appeal." *United States v. Richardson*, 226 U.S.App.D.C. 342, 356, 702 F.2d 1079, 1093 (1983) (Scalia,

---

**2.** Appellant himself later testified, however, that he did not grow hair on the side of his face. Mavis Belt also noted that the gunman wore a baseball cap. She acknowledged that appellant usually wore such a cap.

J., dissenting),[3] *rev'd*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). *Burks* had held that the double jeopardy clause bars retrial after reversal of a conviction for insufficient evidence. Thus, some courts perceived that the Constitution accords no lesser right of review when the first trial ends, more favorably, in a hung jury and yet the defendant, as in *Burks*, faces a second prosecution. *See supra* note 3.[4]

■ Whatever logic there may be to this application of *Burks* and the double jeopardy clause, the Supreme Court has found it unpersuasive. In *Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), the Court held that a defendant who was to be retried after a mistrial attributable to a hung jury could not claim double jeopardy based on insufficiency of the evidence at the first trial.[5] The Court premised the decision on its line of cases, beginning with *United States v. Perez*, 9 Wheat 579, 22 U.S. 579, 6 L.Ed. 165 (1824), which holds a mistrial attributable to a "hung jury" is justified by "manifest necessity" and thus a retrial does not create double jeopardy. *Richardson*, 104 S.Ct. at 3085. The defendant is not twice put in jeopardy, very simply, because "the failure of the jury to reach a verdict is not an event which terminates jeopardy" any more than some other event warranting a mistrial terminates jeopardy. *Id.* at 3086. Accordingly, a lawfully retried defendant is no more constitutionally entitled to acquittal on the basis of the evidence at the first trial than the defendant would be entitled to acquittal on the basis of some error which had resulted in a lawfully declared mistrial and retrial.

It follows that, in legal effect for double jeopardy purposes, the second trial is merely a continuation of the first trial. It is true, of course, that a defendant, upon motion, is entitled to a trial court ruling on evidentiary sufficiency at the end of the first trial, which may result in an acquittal terminating jeopardy before the jury gets the case. *Id.* at 3086 n. 5. But, according to *Richardson*, the denial of that motion followed by a hung jury—keeping jeopardy alive—is enough to permit a constitutional resumption of the prosecution without an appellate-court lookback at the first trial, either before or after retrial, even though the trial court's denial of the motion for

---

**3.** Judge Scalia cited *United States v. Balano*, 618 F.2d 624 (10th Cir.1979), *cert. denied*, 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980); *United States v. Bodey*, 607 F.2d 265 (9th Cir.1979); *United States v. Wilkinson*, 601 F.2d 791 (5th Cir.1979).

**4.** Because the denial of a motion for judgment of acquittal is not an immediately appealable final order, the courts had not agreed on whether review of evidentiary sufficiency at the first trial could properly be invoked, before retrial, through an interlocutory appeal based on the collateral order doctrine, *United States v. McQuilkin*, 673 F.2d 681 (3d Cir.1982); *see Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), or instead would have to await a final judgment of conviction after a later trial. *United States v. Ellis*, 646 F.2d 132 (4th Cir.1981); *United States v. Becton*, 632 F.2d 1294 (5th Cir.1980), *cert. denied*, 454 U.S. 837, 102 S.Ct. 141, 70 L.Ed.2d 117 (1981).

**5.** In *Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), the Supreme Court addressed the question whether a defendant had the right to appellate review of the sufficiency of the evidence *before* retrial of a prosecution which had resulted in a hung jury. Citing *Abney, supra* note 4, the Court permitted interlocutory review but concluded, on the merits, that there was no double jeopardy bar to a retrial "[r]egardless of the sufficiency of the evidence at petitioner's first trial." *Richardson*, 104 S.Ct. at 3086. The Court's reasoning makes clear that a defendant whose first trial ends with a hung jury may never appeal on the ground of double jeopardy, whether before or after retrial. *See id.* at 3092–93 (Stevens, J., dissenting). The Seventh Circuit, applying *Richardson*, recently confirmed this view, holding that after conviction at a second trial, "the sufficiency of the evidence at defendant's first trial is not reviewable under double jeopardy principles"; nor is the defendant entitled to such review as a matter of due process. *United States v. Brack*, 747 F.2d 1142, 1148 (7th Cir. 1984), *cert. denied*, 469 U.S. 1216, 105 S.Ct. 1193, 84 L.Ed.2d 339 (1985).

acquittal (if anyone had looked) may have been wrong.[6]

In contrast, the defendant in *Burks* was convicted, triggering an immediate right of appeal. Because the judgment was reversed for insufficient evidence—"the equivalent of an acquittal"—jeopardy was terminated, just as it would have been had the trial court itself granted the motion for acquittal. *Richardson,* 104 S.Ct. at 3085, 3086 n. 5. Thus, no retrial was permissible. The crucial constitutional distinction for appellate review of evidentiary sufficiency, therefore, is termination of jeopardy, not completion of a trial.

In sum, "[r]egardless of the sufficiency of the evidence at [appellant's] first trial, he has no valid double jeopardy claim to prevent his retrial" after a hung jury, *id.* at 3086 (footnote omitted), or, similarly, to challenge his conviction on that ground after a second trial. *United States v. Brack,* 747 F.2d 1142, 1148 (7th Cir.1984), *cert. denied,* 469 U.S. 1216, 105 S.Ct. 1193, 84 L.Ed.2d 339 (1985). According to *Richardson,* as a matter of double jeopardy law, the public's right to reprosecute after a hung jury is paramount to the defendant's right to review of a completely tried but unresolved indictment, even though the appellate court might have reversed for insufficient evidence at the first trial if the jury had convicted, as in *Burks,* instead of deadlocked, *see Richardson,* 104 S.Ct. at 3086, or if the defendant had been entitled to an interlocutory appeal of the trial court's denial of the motion for acquittal.

### B.

Theoretically, however, the absence of a constitutional bar to a second trial after a hung jury does not necessarily preclude adoption of a judicial policy—in effect, a court rule—that would permit a defendant, before or after retrial, to test the sufficiency of the evidence on which the first jury could not find guilt. Such a rule would be derived from the fundamental notion that "the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his [or her] defense." *Cephus v. United States,* 117 U.S. App.D.C. 15, 17, 324 F.2d 893, 895 (1963). It would follow, the argument goes, that once the government has rested its case at the first trial, the defendant should be permitted to challenge the sufficiency at that point of the evidence of guilt, not only by motion but also, if necessary, by appellate review; otherwise, since there is no double jeopardy bar, the government would have an unfair opportunity to buttress, and perhaps save, a flawed prosecution.

For a long time in this jurisdiction, the federal circuit court of appeals was sympathetic to this kind of thinking. The court held, for example, that, even though a conviction would be sustainable if both the government's and the defendant's evidence were taken into account, the defendant, nonetheless, was entitled to acquittal if the government's evidence alone was insufficient. *Austin v. United States,* 127 U.S. App.D.C. 180, 189 & n. 20, 382 F.2d 129, 138 & n. 20 (1967); *Cephus,* 117 U.S.App. D.C. at 19, 324 F.2d at 897 (dicta); *but see Thompson v. United States,* 132 U.S.App. D.C. 38, 40, 405 F.2d 1106, 1108 (1968) ("evidence introduced by an accused in his [or her] own defense cannot give life to a 'dead horse,' but it can invigorate a weak one"). Even though the defendant put on "evidence which ha[d] the incidental effect of filling the gap in the Government's case," *Cephus,* 117 U.S.App.D.C. at 18, 324 F.2d at 896, the defendant under the *Ce-*

---

**6.** Theoretically, *Richardson's* implicit premise that for double jeopardy purposes a retrial after a hung jury is merely a continuation or resumption of the first trial means that, upon retrial, the government may reopen—and even amplify—its case, with the result that the first trial (as it turned out) was only a partial presentation of the evidence and the motion for judgment of acquittal at the end of the first trial (as it turned out) was therefore premature and irrelevant. As noted in the text, however, one problem with this theoretical formulation is that a defendant has the right to a trial court ruling on a motion for judgment of acquittal at the first trial—a right which, at the time, is obviously not premature and which, if granted, is dispositive. *See Richardson,* 104 S.Ct. at 3086 n. 5.

*phus-Austin* line of cases did not waive the right to test the sufficiency of the government's evidence alone.

However, in *Franey v. United States,* 382 A.2d 1019 (D.C.1978), noting that *Cephus* and its progeny were not binding in the context there at hand, *id.* at 1021–22 nn. 4 & 5, this court rejected the circuit court's approach.[7] We held that a defendant "who introduces evidence after the denial of his [or her] motion for a judgment of acquittal made at the close of the government's case thereby waives that motion and cannot make the ruling the subject of appellate review." *Id.* at 1021 (citations omitted). Presumably in the interest of the whole truth, we concluded that appellate review of evidentiary sufficiency must consider both government and defense evidence.

Similarly, a few months ago in *United States v. Foster,* 783 F.2d 1082 (U.S.App.D.C.1986) (en banc), the Court of Appeals for the District of Columbia Circuit overruled its own, *Cephus-Austin* approach. While carefully reserving some possible exceptions, that court, sitting en banc, announced the waiver rule we had applied in *Franey.* Writing for his colleagues, Judge Scalia was appropriately candid: the so-called "waiver" is not a "genuine" waiver; "it is a conventional fiction used to describe and produce the result that the courts will not blind themselves to incriminating evidence introduced by the defendant who chooses to respond, rather than to demur, to the government's case." *Id.,* at 1084 (citing *United States v. Belt,* 574 F.2d 1234, 1236–37 (5th Cir.1978)).

■ In short, in all the courts of this jurisdiction now, a defendant whose motion for judgment of acquittal is denied at the end of the government's case, but who chooses to present a defense, usually must, if convicted, have his or her own evidence factored into the sufficiency analysis on appeal. This is so for two, related reasons:

(1) because all evidence is germane to the truth, and (2) because the defendant is deemed to have subscribed to that truth-seeking premise by electing to put on evidence rather than to rely solely on contesting the government's evidence.

In contrast, however, a defendant whose motion for judgment of acquittal at the close of all the evidence is denied, but who achieves a hung jury, is not likely to be so enamored of truth-seeking that he or she would choose not only to put on evidence at the first trial but also to proceed to a second trial (permitted by *Richardson* ) in lieu of testing the sufficiency of the evidence—both government and defense—at the first trial. The position of a defendant who faces reprosecution after a hung jury, therefore, is not one of choosing to go forward as in *Franey* and *Foster.* Rather, it is akin to that of the defendant who elects to challenge the sufficiency of the government's proof at the first trial by resting his or her case, rather than by putting on evidence that might "fill[] the gap in the Government's case." *Cephus,* 117 U.S.App.D.C. at 18, 324 F.2d at 896.

The defendant who receives a hung jury, therefore, asks only for the right to test the sufficiency of the evidence at the first trial, coupled with the same right of appellate review (and potential for acquittal) that he or she would receive if the jury had been more impressed with the prosecution at the first trial and had convicted. This defendant stresses the inequity of granting the government a second chance to prevail in the one instance, but not in the other, when a review of the evidence would show that the government failed in its proof in both. This argument, derived by analogy to *Austin* and *Cephus,* has obvious force.

■ Nonetheless, we reject it. In *Richardson,* the Supreme Court has held, insofar as double jeopardy protection is concerned, that the government's right to

7. *Compare Dumas v. United States,* 483 A.2d 301, 304 (D.C.1984) (*Cephus* binding when co-defendant introduces testimony which damages appellant and fills gap in government's case against appellant).

reprosecute after a hung jury is paramount to a defendant's right to test the sufficiency of the evidence at the first trial by appealing the trial court's denial of a motion for judgment of acquittal. Although perhaps we could, as a matter of judicial policy, cf. Austin; Cephus, condition that right to reprosecute on the government's surviving a review of evidentiary sufficiency at the first trial, we conclude that such a limitation on the government would come too close to invoking double jeopardy principles, in derogation of Richardson, under the guise of an enhanced right to appellate review. Logic may dictate a defendant's right in every case to appellate review of the denial of a motion for acquittal at the first trial, before a conviction at a second trial can be sustained. But, if we were to take that approach, we would compromise a right of the public—unfettered reprosecution after a hung jury—which the Supreme Court in Richardson manifestly intended to confer.[8]

### III.

Appellant contends the trial court erred in admitting police officers' testimony about eyewitness Sidney Tinney's extrajudicial identifications. Tinney had picked appellant's picture from a group of individual photographs and also had identified appellant from a line-up photograph.[9]

At trial, however, Tinney surprised the prosecutor by claiming he had made a mistake. "[T]he man there . on trial, that doesn't look like the man that I saw that night." The trial court therefore permitted the prosecutor to impeach Tinney with his prior identifications and also to call two detectives to testify about Tinney's extrajudicial identifications.[10]

Appellant now claims, for the first time on appeal, that the detectives' testimony was cumulative, highly prejudicial, and thus inadmissible under the "peculiar and special facts" of this case. Specifically, he asserts that testimony by persons who might otherwise be permitted to confirm prior identifications, supra note 10, should not be allowed when the witness, at trial, "retracts" the identification.

The government disagrees, emphasizing that the detectives testified for the sole purpose of impeaching Tinney's credibility, that the jury was so instructed, and that there was no prejudice warranting reversal.

---

8. Nor is dismissal of this case warranted under Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for lack of a speedy trial. Appellant did assert his speedy trial right promptly and suffered prejudice from incarceration attributable to the instant charges. However, the length of delay between arrest and the first trial—two weeks more than one year—was barely enough for a presumptive speedy trial violation. See Graves v. United States, 490 A.2d 1086, 1091 (D.C.1984) (en banc), cert. denied, — U.S. —, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986). Furthermore, the reasons for delay were, primarily, legitimate government investigative responsibilities coupled with typical delays attributable, for example, to a government-requested continuance and to appellant's own late-filed motions. Finally, there was no prejudicial anxiety of record or demonstrable prejudice to defense preparation. When we evaluate all the relevant factors on this record, we conclude there was no Sixth Amendment violation. See Reese v. United States, 467 A.2d 152, 159, 160 (D.C.1983) (early and repeated assertion of right plus incarceration for eleven months between arrest and trial "weigh in favor" of speedy

trial claim, but actual length of delay, neutral reasons for delay, and little evident prejudice "outweigh these concerns").

9. Pursuant to an agreed-upon procedure, Tinney said "no" as Harris showed him a series of photographs but remained silent when appellant's photograph was displaced. Detective Bagley showed Tinney a line-up photograph, and Tinney chose the individual wearing shield number 6 (appellant).

10. Defense counsel did not specifically object to the testimony of either Harris or Bagley relating to the facts surrounding the identification; counsel objected, apparently on hearsay grounds, to their testimony about Tinney's statements. The trial court overruled the objection citing Clemons v. United States, 133 U.S.App. D.C. 27, 39–40, 408 F.2d 1230, 1242–43 (1968) (en banc), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969). Accord Jones v. United States, 483 A.2d 1149, 1155–56 (D.C. 1984), cert. denied, — U.S. —, 105 S.Ct. 2363, 86 L.Ed.2d 263 (1985).

We agree with the government and thus perceive no error, let alone plain error. In the first place, unlike *In re L.D.O.*, 400 A.2d 1055 (D.C.1979), *Gibbs v. State*, 7 Md.App. 35, 253 A.2d 446 (1969), and other cases cited by appellant, the government's case did not depend only on Tinney's identification of appellant. Rather, the case rested on appellant's positive identification by Triplett, who adopted at trial his prior identifications and identified appellant again in court. The trial court properly recognized that Triplett's "one witness identification can go to the jury."

As appellant acknowledges, Tinney's prior identifications were not admitted for substantive purposes; they were not intended to corroborate Triplett. The government, rather, was attempting to use them to counter the impact of Tinney's surprise testimony that the man on trial did not look like the gunman. The court instructed the jury before the detectives testified, and again at the close of the case, that the jury was to consider all testimony relating to Tinney's extrajudicial identifications only for evaluating the credibility of Tinney's own testimony on the witness stand, not for the purpose of establishing the truth of any fact asserted in the prior statement. Under these circumstances, the trial court did not err in admitting the detectives' testimony for impeachment purposes and took appropriate steps to cure any prejudice to appellant from Tinney's impeachment.

## IV.

Appellant also claims the trial court erred in permitting improper cross-examination of a defense witness, Roland White. Specifically, appellant objects to a then common cross-examination technique of confronting a witness with a recapitulation of the testimony of other witnesses that contradict his or her testimony, and then eliciting from the witness a conclusion that the other witnesses had lied or were mistaken. Appellant did not make this objection at trial, but, shortly thereafter, we explicitly condemned this type of cross-examination. *Carter v. United States*, 475 A.2d 1118, 1126 (D.C.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 2222, 84 L.Ed.2d 362 (1985).

Whatever our standard of review should be, harmless error or plain error, we conclude that any error here was not prejudicial and thus does not entitle appellant to a new trial. Roland White was an insignificant defense witness, and the matters about which he was improperly cross-examined were of no consequence. Appellant admits that the sole purpose served by White's testimony was to show that Bush and Triplett were associates and that Triplett had a full beard the day Bush was shot.

Both of these points were mentioned by other witnesses. The improper cross-examination related to other, virtually irrelevant questions: where White stood when the shots were fired and who spoke to White afterwards. White's testimony did not bear directly on the main issue in dispute: the identity of the gunman. The court twice instructed the jurors, moreover, that they were "the only judges of the believability of the witnesses." Appellant's case could not have been prejudiced by the improper cross-examination of White.

*Affirmed; Remanded for resentencing.*

Statement of Associate Judge BELSON:

I concur in the result reached in section II, and otherwise join in the opinion. With respect to section II, I think it is enough to say that the outcome is controlled by *United States v. Richardson*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984).