David A. WILSON, Appellant,

v.

UNITED STATES, and District of
Columbia, Appellees.

No. 10892.

District of Columbia Court of Appeals.

Argued Feb. 9, 1977.

Decided Dec. 12, 1977.

Rehearing and Rehearing en Banc Denied
Feb. 14, 1978.

Gaillard T. Hunt, Washington, D. C., appointed by this court, for appellant.

Richard H. Saltsman, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Gary A. Hall, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee United States.

Margaret L. Hines, Asst. Corp. Counsel, with whom John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Deputy Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellee District of Columbia.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

GALLAGHER, Associate Judge:

Appellant was found guilty by a jury of receiving stolen property [1] and operating a motor vehicle when his license was suspended.[2] Imposition of sentence was suspended as to both charges, and appellant was placed on one year's probation.

On October 30, 1975, a police officer saw appellant driving a car on Wisconsin Avenue accompanied by a passenger. The passenger was appellant's brother. Because he thought the car was the target of a local lookout, the officer called the Crime Analysis Unit of the police department. He then arrested appellant because stolen tags were attached to the car. Appellant, along with his brother, was taken to the precinct station, and, after being advised of his *Miranda* rights,[3] he stated that he had taken the tags from a car parked in his neighborhood because the police had taken his and that his brother had nothing to do with the taking. When the officer arrived at the station, he checked the Washington Area Law Enforcement System (WALES), which is a computerized system containing information pertinent to law enforcement. The information obtained indicated that appellant's driving privileges in the District of Columbia had been suspended. He was thereupon charged with operating a vehicle after his license had been suspended.

Appellant's trial was held on March 1 and 2, 1976. The prosecution called a witness, Miss Marie Alberti, who testified that the tags from her car had been stolen on May 6, 1975. The prosecution also called an officer

of the Bureau of Motor Vehicles Services of the District of Columbia Department of Transportation. He testified that appellant's file, which he brought to trial, contained an order of suspension issued by the Safety Responsibility Division which had been served on appellant and signed with appellant's name on February 19, 1975. The Notice and Order of Suspension contained a notation that appellant's permit had been surrendered on May 14, 1975, and appellant's permit had been found in the security holding file which contains permits turned in because they have been suspended.

After the end of the proceedings on March 1, 1976, appellant was arrested for his alleged connection with an illegal fencing operation in the District of Columbia. The trial judge had known earlier in the day of the existence of the felony warrant and he had instructed the police not to serve the warrant until after the proceedings for that day had ended. He also took the precaution of having the appellant remain in the courtroom for a period of time after the jurors had been dismissed. When appellant left the courtroom, he was immediately arrested. Although there is disagreement as to its cause, a disturbance occurred while appellant was being arrested. On the next day, defense counsel requested a mistrial because of the circumstances surrounding the arrest the previous day. The court denied the request when the attorney was unable to state he had personal knowledge that jurors in the trial had witnessed or had knowledge of the arrest. The court also denied a request for a voir dire examination of the jurors regarding the arrest for the same reason.

Appellant later filed a motion for a new trial on the ground, *inter alia,* that several jurors had witnessed or had knowledge of appellant's arrest and the circumstances surrounding it. The motion for a new trial was accompanied by an affidavit of defense counsel that several of the jurors had told

---

1. D.C.Code 1973, § 22–2205.

2. D.C.Code 1973, § 40–302.

3. *Miranda v. United States,* 384 U.S. 436, 84 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

him either of their knowledge of the arrest or of having seen him in handcuffs after the arrest. Without conducting a hearing, the trial judge denied the motion.

■ Appellant contends that numerous errors were made in the proceedings below, but we find it unnecessary to discuss most of the errors alleged.[4] The focus of one of appellant's attacks is the trial court's jury instruction:

> [I]f you find beyond a reasonable doubt that the defendant was in exclusive possession of property of Marie Alberti, and that this property had recently been stolen, and the defendant was in possession of said property on the date in question, and under the circumstances in question, had not been satisfactorily explained, then you may, if you see fit to do so, infer therefrom that the defendant is guilty of receiving stolen property. You are not required so to infer, but you may do so if you deem it appropriate.

> The term recently stolen does not refer to any specific period of time. It is for you to determine, on the basis of all the facts and circumstances, whether the property was recently stolen. The longer the period of time since the property was stolen, the weaker the inference is which may be drawn from the possession of the property.

Appellant first contends that the instruction permitted the jury to infer every element of the crime of receiving stolen property solely from appellant's possession of the tags. The instruction given does not permit such an interpretation. The inference that the defendant is guilty of receiving stolen property may be drawn by the jury only if the government proves beyond a reasonable doubt all elements of the crime.

■ Appellant also contends that it was error to give that instruction because such an instruction is appropriate only in a trial for larceny and not in one for receiving stolen property for the reason that it fails to indicate that knowledge of the defendant that the property is stolen is an element of the crime. However, this court has approved the use of a similar instruction in a trial on the charge of receiving stolen property. *See Fleming v. United States*, D.C. App., 310 A.2d 214 (1973).

As indicated, the trial court denied requests for a mistrial and a voir dire examination of the jury and also a motion for a new trial based on the arrest of appellant outside the courtroom at the end of the first day's proceedings. We deal only with the denial of appellant's motion for a new trial which was accompanied by an affidavit of defense counsel that several jurors had told him that they had seen or had knowledge of appellant's arrest.[5]

■ One of the basic components of a fair trial is the presumption of the innocence of the accused. *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). In *Estelle*, the Court recognized that compelling an accused to go to trial in prison clothes would violate the accused's right to due process because of the possible impairment of the presumption of innocence. *Id.* at 504, 96 S.Ct. 1691. The Court also recognized that handcuffing or shackling an accused may unconstitutionally affect the presumption although use of physical restraints might be justified by a defendant's contumacious behavior. *Id.* at 505, 96 S.Ct. 1691.[6] It would appear that

---

4. We conclude that the numerous other assignments of error not discussed are without merit.

5. The government questions whether the denial of the motion for a new trial is before this court on appeal. There was a timely notice of appeal and the motion for a new trial and its denial are in the record on appeal and the issue has been briefed by the parties. We see no good reason not to review the issue.

6. In some jurisdictions, a brief and fortuitous encounter between a handcuffed defendant and his jurors results in an examination of the jurors involved to determine whether there was prejudice. *Wright v. Texas*, 533 F.2d 185 (5th Cir. 1976); *United States v. Torres*, 519 F.2d 723 (2d Cir.), *cert. denied*, 423 U.S. 1019, 96 S.Ct. 457, 46 L.Ed.2d 392 (1975); *United States v. Chipman*, 513 F.2d 1262 (6th Cir. 1975); *United States v. Shaver*, 511 F.2d 933 (4th Cir. 1975).

arresting and handcuffing a defendant in the presence of his trial jurors on a charge not related to that for which he is being tried may similarly be prejudicial to his right of a fair trial.

Even though the motion for a new trial was accompanied by the sworn affidavit of the defense counsel that several jurors had told him that they had learned of appellant's arrest and had seen him being led away in handcuffs, the trial court denied the motion without conducting a hearing. Generally, the trial court may decide a motion for a new trial without a hearing. *See Poteat v. United States*, D.C.App., 363 A.2d 295, 297 (1976). But in a circumstance such as this, it is required that a hearing be held.[7] The trial court should have examined the jurors as to their knowledge, if any, of appellant's arrest and handcuffing while the trial was still in progress. In failing to conduct such a hearing, the trial court abused its discretion. The court seems to have ruled, in effect, that a fortuitous observation by the jurors of appellant's arrest and handcuffing would not in itself be prejudicial. We consider that such occurrences are needless and may be impingements on the presumption of innocence; and the question of prejudice must be explored.

We remand to the trial court with directions to hold a hearing to determine whether any jurors witnessed or had knowledge of appellant's arrest during the trial. If after the hearing it is found that any juror witnessed or had knowledge of the arrest, or that discussions of the incident took place among the jurors, the trial court should assess their testimony and reach a conclusion on whether appellant was prejudiced, thereby requiring a new trial. In relation to the hearing, a juror may testify concerning the "existence of any extraneous influence, although not as to how far that influence operated upon his mind." *Mattox v. United States*, 146 U.S. 140, 149, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892). That is

for the trial court to determine "on the basis of the nature of the matter and its probable effect on a hypothetical average jury." *United States v. Crosby*, 294 F.2d 928, 950 (2d Cir. 1961), quoted in *United States v. McKinney*, 429 F.2d 1019, 1030–31 (5th Cir. 1970). The court "must decide the question of prejudice on the basis of an independent evaluation of all the circumstances of the case." *Id.* at 1030.

*Remanded with instructions.*

NEBEKER, Associate Judge, concurring:

While I concur in the court's disposition of this case, I believe that two matters should be clarified for the benefit of the trial judge in this and future cases.

*First.* The court cites *Poteat v. United States*, D.C.App., 363 A.2d 295 (1976), as an example of a situation in which a new trial motion did not require a hearing. That case should be more fully distinguished from the instant circumstances.

In *Poteat*, we approved the denial of a new trial without a hearing where the motion was based upon affidavits of newly discovered evidence. It was clear from those affidavits and the record of the trial that the proffered evidence was neither newly discovered nor likely to have produced an acquittal had it been admitted. 363 A.2d at 297. The circumstances of the instant case, however, present the possibility that appellant was prejudiced in his right to a fair trial. The affidavits in this case allege a factor extraneous to the issues at appellant's trial which may have diluted the presumption of innocence. *See Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (forcing accused to stand trial in prison clothes); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (presumption of innocence may not be affected by age of accused). *Cf. Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (accused's contumacious behavior justified shackling and gagging

---

7. This has been a rule which has guided the federal courts in dealing with motions for a new trial under Fed.R.Crim.P. 33, which is identical in all respects to Super.Ct.Cr.R. 33. *See, e. g., United States v. McKinney*, 429 F.2d 1019, 1030 (5th Cir. 1970).

during trial). Since, unlike *Poteat,* we are unable to determine from the record the likelihood of prejudice, there must be a hearing to develop the facts upon which the trial court will rely for its conclusions. Only then will we be able to review those conclusions.

*Second.* The court, in its remand instructions, assumes that the trial court, should it find that any juror witnessed the incident, must immediately take juror testimony to determine whether the incident acted as an "extraneous influence" upon jury deliberations. By doing so the court implies—but does not hold—that the circumstances, if viewed by jurors, could not constitute per se prejudice to appellant's presumption of innocence. An evaluation of the likely effects of an extraneous influence may proceed from the individual facts of a case. *See Hall v. Cox,* 324 F.Supp. 786 (W.D.Va. 1971) (trial in prison clothing; showing of actual prejudice required). But, if in reason or principle or in light of common experience a court may conclude that an extraneous influence is inherently prejudicial, it may so hold without a showing of actual prejudice. *See Brooks v. Texas,* 381 F.2d 619, 624 (5th Cir. 1967) (trial in prison clothing renders trial inherently unfair). Neither procedure was expressly approved or disapproved in *Estelle.* I would not be prepared to hold, on this record, that the incident alleged would necessarily render the trial unfair. I would not, however, foreclose such a conclusion. But the trial court must make the initial judgment after it has had an opportunity to become fully acquainted with the circumstances resulting from the incident against the backdrop of the facts establishing guilt.

Only if the trial court finds no inherent prejudice must it determine whether the incident actually prejudiced appellant in respect to the presumption of innocence. Such a determination would, of course, be best accomplished with the knowledge of the operation of the minds of the jurors. Strong and cogent policy reasons, as well as precedent, however, preclude such polling of the jury once a verdict has been rendered. *Mattox v. United States,* 146 U.S. 140, 149, 13 S.Ct. 50, 36 L.Ed. 917 (1892). *Compare United States v. Crosby,* 294 F.2d 928, 949–50 (2d Cir. 1961), and *United States v. McKinney,* 429 F.2d 1019, 1030–31 (5th Cir. 1970) (polling after verdict), *with United States v. Torres,* 519 F.2d 723, 727–28 (2d Cir. 1975), and *United States v. Chipman,* 513 F.2d 1262, 1263 (6th Cir. 1975) (polling before verdict). Should the court find, therefore, that any of the jurors saw the incident, the trial court is limited in its further questioning to whether the incident was discussed in the course of jury deliberations and, if so, what was said. *See McKinney, supra* at 1030–31. The court may not question as to the effect of these discussions upon the jury verdict, but must, in light of what was said, determine for itself whether such discussions would affect the deliberations of "a hypothetical average jury," *United States v. Crosby, supra* at 950, hearing the evidence in the case. *See* D.C.Code 1973, § 11–721(e).