**Mary V. BRANCH, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 10883.

District of Columbia Court of Appeals.

Argued Nov. 10, 1977.

Decided Feb. 10, 1978.

---

Peter L. Sissman, Arlington, Va., appointed by this court, with whom Lawrence P. Lataif, Arlington, Va., also appointed by this court, was on brief, for appellant.

Neil I. Levy, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and William D. Pease, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before KERN, NEBEKER and FERREN, Associate Judges.

NEBEKER, Associate Judge:

This is an appeal from a conviction of voluntary manslaughter while armed (D.C. Code 1973, §§ 22–2405, –3202). Appellant claims there was insufficient evidence to support her conviction, that it was error to convict her as an aider and abettor of a lesser offense than that of the principal, and that a juror-spectator contact resulted in a denial of a fair trial. We affirm.

As to the sufficiency claim, we find the following evidence an adequate basis for the jury's finding of guilt. Appellant Branch supplied the razor blade which Betty Simpson used to kill Lanier Jackson. Appellant accompanied Simpson to Jackson's apartment at two o'clock on a Sunday morning knowing that "Sonny" Williams, the father of Simpson's child, could be found there with his new girl friend, Jackson. Simpson told appellant that "the bitch lives in room 1." Simpson and appellant tried to break into the apartment by pulling a screen off a window. They ultimately gained entry through subterfuge by telling Jackson, "It's Carolyn." When Simpson confronted Williams, saying, "I have caught you," appellant told Jackson's roommate, "She has a baby by Sonny; you should know how she feels." Appellant picked up

a bottle and stationed herself in front of a door. When Simpson attacked Jackson, appellant kept the roommate from helping the victim by threatening her with the bottle, saying, "Stand back, unless you want some of this too." After the fight, appellant struck the decedent on the head with the bottle. Appellant and Simpson left together, picked up their children at home, and all spent the remainder of the night at the home of appellant's fiancé.

■ It is evident that appellant's involvement in the homicide transcends mere presence at the scene of the crime. The government's evidence, which we must assume to be true and give the benefit of all permissible inferences, *Creek v. United States*, D.C. App., 324 A.2d 688 (1974), is a sufficient basis for a jury to find beyond a reasonable doubt that (1) the offense was committed by someone (Simpson);[1] (2) the appellant participated or assisted in its commission;[2] and (3) she did so with guilty knowledge.[3] *See Blango v. United States*, D.C.App., 335 A.2d 230 (1975).

Appellant also contends that it was improper for the jury to convict her of a different offense from that of her codefendant, given the trial judge's denial of a government motion for instructions on the lesser included offense of unarmed manslaughter. According to appellant, the trial court in so ruling held that she could not be convicted of an offense different from that of the principal. It is our opinion that appellant has misconstrued the trial court's ruling.

■ The trial court properly ruled that for appellant to be convicted as an aider and abettor, the jury first would have to find that the principal committed the crime.[4] *See Shanahan v. United States*, D.C.App., 354 A.2d 524 (1976). As voluntary manslaughter while armed is a lesser included offense within second-degree murder while armed, the jury necessarily found that codefendant Simpson's conduct included voluntary manslaughter while armed. Having so found, the jury's conviction of appellant for aiding and abetting that offense is proper. *See United States v. Paszek*, 432 F.2d 780 (9th Cir. 1970); *People v. Folkes*, 71 Mich.App. 95, 246 N.W.2d 403 (1976).

The trial court did not rule that the codefendants must be convicted, if at all, of identical offenses, nor would it have been correct in so doing. The law allows for some jury compromise. *See Steadman v. United States*, D.C.App., 358 A.2d 329 (1976), and cases cited therein. Moreover, this compromise has not prejudiced the appellant.

As her final argument, appellant urges that she did not receive a fair trial because of a possible influence on the jury resulting from a contact between a juror and a spectator. Her motion for a mistrial on this basis was not erroneously denied.

■ During a recess, one juror approached the trial judge to tell him that a spectator, a neighbor of hers, had said "hello" to her in the hall. Earlier, this juror had seen the same woman speaking to Betty Simpson's mother. The juror was re-

---

1. Simpson was convicted of second-degree murder while armed, D.C.Code 1973, §§ 22–2403, –3202. Voluntary manslaughter is a lesser included offense within second-degree murder. *United States v. Comer*, 137 U.S.App.D.C. 214, 421 F.2d 1149 (1970).

2. The jury reasonably could have found that appellant participated or assisted Simpson by supplying the razor blade, by positioning herself in front of the doorway, by threatening the roommate with the bottle, and by striking the decedent on the head.

3. Guilty knowledge on appellant's part could be inferred from appellant's accompanying Simp-

son on the 2 a. m. trip to the apartment of one referred to as a "bitch" who was sleeping with Simpson's paramour, the subterfuge used to enter the apartment, her statements to the roommate, her flight with Simpson, and her apparent attempt to avoid police detection by taking her family to another house for the rest of the night.

4. Because appellant was charged only with aiding and abetting, an instruction on unarmed manslaughter would have been inappropriate, given the fact that there was no evidence that the principal committed the crime while unarmed.

moved from the panel because she was afraid that her neighbor might tell the defendants or their friends where she lived.[5] Because she had mentioned the incident in the jury room, the court conducted an individualized voir dire of each juror. Six of the jurors were aware of the incident, including one who had seen it. However, each juror indicated that it would not affect his or her deliberations in any manner.[6]

 A mistrial motion which is based on matters occurring outside the courtroom is within the sound discretion of the trial court. *Hammond v. United States*, D.C. App., 345 A.2d 140 (1975). This record does not permit reversal of the trial court's decision.

Accordingly, the conviction is

*Affirmed.*

---

**5.** The excused juror also said that her nervousness was increased when someone opened the door of the jury room several times and looked inside. This was an innocuous event which occurred prior to impanelment. The person turned out to be a 17-year-old boy looking for his mother.

**6.** There is a significant difference between this situation and the recently decided case of *Wilson v. United States*, D.C.App., 380 A.2d 1001 (1977). There we remanded for a hearing to determine whether jurors had witnessed the arrest and handcuffing of the defendant on a felony charge unrelated to the trial. Because the *Wilson* voir dire necessarily will occur after

the verdict, the trial judge may not ask the jurors if the incident affected their deliberations, but must decide only whether the incident or any discussions of it "would affect the deliberations of a 'hypothetical average jury'." *Wilson v. United States, supra,* at 1005 (citation omitted) (Nebeker, J., concurring). However, in the instant case, the voir dire was conducted prior to the jury's deliberations and thus each juror and alternate could be questioned regarding the effect of the incident and the discussion of it in the jury room. *See United States v. Crosby*, 294 F.2d 928, 949–50 (2d Cir. 1961).