**Warren GEDDIE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 92–CF–767.**

District of Columbia Court of Appeals.

Argued June 22, 1994.

Decided Aug. 14, 1995.

Enid Hinkes, appointed by the court, for appellant.

D. Shane Read, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and Gary M. Wheeler, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, STEADMAN, and SCHWELB, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of distributing heroin, in violation of D.C.Code § 33-541(a)(1) (1993). He seeks a new trial on the ground that threats from his co-defendant—threats that were never mentioned to the trial court until after the jury had returned a guilty verdict against appellant and his co-defendant—deprived him of his right to testify and his right to a fair trial. We hold that the trial court abused its discretion in summarily denying appellant's motion for new trial, and we remand the case for further consideration of that motion.

## I

Undercover officers from the Metropolitan Police were investigating drug traffic in the 3200 block of Georgia Avenue, N.W., when one of the officers, Alphonso Walton, encountered appellant Geddie in front of a house in the middle of the block. Geddie was saying, "747, 747," which Officer Walton recognized as a street name for heroin. When Walton said he wanted to buy some, Geddie told him to "hold tight." Geddie then walked over to speak to another man, his co-defendant Michael Gordon, who was standing about four feet away. Gordon handed Geddie a small bundle of five or six ziplock bags held together by a rubber band, and Geddie walked back to Officer Walton. As Geddie started to pull one of the ziplock bags out of the bundle, Gordon told him to step into a doorway. Once inside the doorway of 3218 Georgia Avenue, Walton gave Geddie a $20 bill whose serial number had been pre-recorded, and Geddie handed him a small bag of white powder. (Later tests showed that the powder was heroin.) Walton then walked away, and Gordon rejoined Geddie in the doorway.

Moments later, other officers arrested both Geddie and Gordon. At the time of his arrest, Geddie had $123 in his possession. He did not, however, have the $20 bill with which Officer Walton bought the ziplock bag; that bill was found on Gordon, who had a total of $329 on him when arrested.[1]

Geddie and Gordon were tried together before a jury. Geddie's defense was that he was misidentified and that Officer Walton was "confused" when he made his identification. Geddie also presented the testimony of Regina Pitt, his girl friend at the time, who stated that she and Geddie had made plans to see a movie and that Geddie was being arrested when she arrived to meet him. Pitt also testified that Geddie had agreed to buy the movie tickets because he knew he was going to be paid that day. Geddie himself did not testify.

Gordon likewise tried to challenge the accuracy of the police officers' identification of him. His defense, however, was complicated by the fact that he was found in possession of the pre-recorded $20 bill. To explain how he came into possession of that bill, Gordon offered the testimony of Howard Diggs and

---

1. The government presented an expert witness who described the respective roles of a "runner" and a "holder" in a two-person drug sale.

Celestine Jackson, who said that Gordon had "snatched" money—including the marked bill—out of Geddie's hand after Geddie had failed to paint the house of a woman named Angela. Angela Alston also testified, on behalf of Gordon, that Geddie had agreed to paint her apartment for $60, but that he had not done so. Gordon did not testify. In closing argument, Geddie's lawyer commented that Gordon's explanation of how he snatched the money, including the marked $20 bill, from Geddie seemed "too coincidental." The jury found both defendants guilty.

A few weeks after the trial, but before sentencing, Geddie filed a motion for new trial alleging that Gordon had intimidated him and had prevented him from testifying and from "properly" cross-examining Gordon's defense witnesses. The motion stated that Gordon "and persons [known] to be associated with" Gordon had made "both open and veiled threats to [Geddie] that he was not to do or say anything that would negatively affect co-defendant Gordon's case or his defense." The motion further alleged that one of Geddie's witnesses had been threatened "and threats were made concerning [Geddie's] family." Geddie took these threats seriously because he "was aware of occasions where [Gordon] beat people up or had them beaten up by his associates," and he had "reason to believe [Gordon] may have had people killed." Throughout the trial, whenever Geddie left the courtroom to smoke a cigarette or go to the men's room, he was followed by "persons in the courtroom" whom he knew to be associates of Gordon. He "was also watched after leaving court." Because of these actions, Geddie was afraid to testify in his own behalf, and his counsel was unable to cross-examine Gordon's witnesses effectively. As a result, the motion asserted, Geddie "could not receive a fair trial."

When Geddie came back before the court for sentencing, the court denied both the motion for new trial and a motion to seal that motion, saying, "I don't really see any reason to seal it. And I will overrule your motion for a new trial. I'm ready to go ahead with sentencing." Geddie's counsel then sought to make a "further statement." After she began to recite Geddie's reasons for moving for a new trial, the court said:

THE COURT: Well, birds of a feather have to take the consequences. They flock together. I think he had a fair trial. I'm sure I gave him the Rule 11 [*sic*] warning when he didn't take the stand. I do that invariably. I'm sure if you look back in the record in this case—

Ms. HINKES [Geddie's counsel]: Your Honor gave him a warning. When you're afraid, you know, of other people, you're afraid for your life, then there's no way you can change at that point.

THE COURT: You do that, you shouldn't commit crime. I mean that's the answer. Abide by the law and you don't have to be afraid of other people.

I'll put this [motion for new trial] in the file with today's date, and I'll sign it. I'll put it in the file. I think you're covered in here. Let's go ahead with the sentencing.

The court then sentenced Geddie to a prison term of five to fifteen years, five years being the mandatory minimum sentence. Geddie then noted this appeal.[2]

## II

Under Super.Ct.Crim.R. 33, the trial court "may grant a new trial ... if required in the interest of justice." To determine whether a new trial is "required in the interest of justice," the trial court must sit "as a thirteenth juror" and determine whether "a fair trial requires that the [claim presented in the motion for new trial] be made available to the jury." *Brodie v. United States,* 111 U.S.App.D.C. 170, 173, 295 F.2d 157, 160 (1961) (citations omitted), cited in *Godfrey v. United States,* 454 A.2d 293, 299 (D.C.1982). We review a decision to deny a motion for new trial for abuse of discretion. *See, e.g., Derrington v. United States,* 488 A.2d 1314, 1339 (D.C.1985). Thus we will not reverse the denial of such a motion "as long as that denial is reasonable and supported by

---

2. Gordon also appealed from his conviction, but his appeal was heard separately. His conviction was affirmed by this court in an unpublished memorandum opinion and judgment. *Gordon v. United States,* No. 92–CF–632 (D.C. June 3, 1994).

evidence in the record." *Townsend v. United States,* 549 A.2d 724, 726 (D.C.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2457, 104 L.Ed.2d 1011 (1989). In general, a trial court does not need to hold a hearing before ruling on a motion for new trial. *Wilson v. United States,* 380 A.2d 1001, 1004 (D.C. 1977) (citations omitted). In this case, however, we conclude that the court abused its broad discretion by summarily denying Geddie's motion.

Our decision in *United States v. Hamid,* 531 A.2d 628 (D.C.1987), establishes that a claim of duress or intimidation by a co-defendant may entitle a defendant to some form of relief. *Hamid* involved a petition for a writ of error *coram nobis,* filed long after a highly publicized trial and conviction, affirmance of that conviction on appeal, and the denial of a motion to vacate sentence under D.C.Code § 23–110. The *coram nobis* petition was based on a claim that one of Hamid's co-defendants had "prevented [him] from raising a defense at trial and from presenting mitigating factors to the trial court at sentencing due to fear, threats of force and violence" directed at Hamid, his family, his lawyer, and his lawyer's family. *Id.* at 631. The trial court granted the petition after an evidentiary hearing and substantially reduced Hamid's sentence. This court affirmed, holding *inter alia* that the original sentence (totaling 36 to 108 years) had been imposed in violation of due process because the court had been deprived of essential information as a result of the co-defendant's threats. *Id.* at 643–644. While *Hamid* is not squarely on point here, it demonstrates at a minimum that Geddie's new trial motion was not frivolous and warranted the court's serious consideration.

■ "Discretion signifies choice," and a trial court "must choose wisely so that its judgment reflects 'a discretion exercised not arbitrarily or willfully but with regard to what is right and equitable under the circum- stances and the law, and directed by the reason and conscience of the judge to a just result.' " *Johnson v. United States,* 398 A.2d 354, 361 (D.C.1979) (quoting *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931)). Our review of a discretionary ruling by the trial court requires us to make a three-part determination: first, whether the matter at issue was committed to the court's sound discretion; second, whether the trial court recognized that it had discretion and, if so, whether the court purported to exercise that discretion; and third, whether the record reveals sufficient facts upon which the court based its decision. *Johnson, supra,* 398 A.2d at 363–364. The trial court's ruling in this case fails the second and third parts of this test.

■ Although "[t]he test of the record underlying the exercise of a trial court's discretion tends to vary somewhat with the nature of the issue to be decided, [g]enerally the factual record must be capable of supporting the determination reached by the trial court." *Johnson, supra,* 398 A.2d at 364. In this case, because the motion presented a colorable claim for relief, *see Hamid, supra,* we conclude that the court abused its discretion in denying the motion out of hand, without even stating a reason for the denial. Moreover, after the court had announced its ruling, defense counsel started to say something about the alleged instances of intimidation, but the court cut her off with its remark about "birds of a feather." We are thus unable to discern any basis or explanation for the court's denial of Geddie's Rule 33 motion. Because the alleged intimidation "present[ed] the possibility that appellant was prejudiced in his right to a fair trial," *Wilson v. United States, supra,* 380 A.2d at 1004 (Nebeker, J., concurring), we must remand this case to the trial court for further consideration of Geddie's allegations.[3]

---

3. Neither the court's generalization about "birds of a feather" nor his later homily that if you "abide by the law ... you don't have to be afraid of other people" adequately explains the challenged ruling. If Geddie's claim that Gordon prevented him from presenting an effective defense is correct, then there has been no legiti- mate proof that he and Gordon are in fact "birds of a feather" or that Geddie has failed to "abide by the law." An allegation of duress which may have precluded a fair trial must not be summarily rejected on the ground that the victim of the duress should not have associated with the perpetrator.

## III

■ Although we remand this case for further proceedings because of the trial court's failure to exercise its discretion properly, we think it also appropriate to note our concern about the manner in which Geddie asserted his claim for relief and about his delay in presenting that claim. When a defendant believes that he or she is facing intimidation from a co-defendant, the most suitable means for bringing the matter to the court's attention would normally be a motion for severance, *before trial*, under Super.Ct.Crim.R. 14. If that is not feasible, then the next-best course would be to raise the issue during, rather than after, trial. A claim of intimidation that is withheld until the trial is over, after months of silence, runs a greater risk of being rejected, either because it is less likely to be found credible or because effective relief is less likely to be available.

Geddie argues that neither moving for severance nor raising his claim of intimidation during trial was possible because it would have alerted his co-defendant that he was a "snitch," resulting in retaliation against him or his family. These concerns, however, may well be unfounded. He could have sought some type of *ex parte* contact with the court about the alleged intimidation. *See, e.g., Lumpkin v. United States*, 586 A.2d 701, 707–708 (D.C.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 116 (1991). He could have filed a motion for relief before trial and also moved to seal that motion (as he did after trial) so that his co-defendant would not find out about it. *See, e.g., Gooding v. United States*, 529 A.2d 301, 310 (D.C. 1987) (in considering motion to withdraw guilty plea, court ordered entire record sealed on three occasions to protect defendant who feared his co-defendant, and later ordered that defendant be placed in protective custody). Either of these tactics would have alerted the court in a timely fashion to Geddie's concerns without endangering him or his family.

In this case, nevertheless, we have before us a record showing that appellant Geddie, however tardily, did raise a sufficient claim of intimidation to warrant more than a summary denial. We therefore remand the case for further consideration, the exact nature of which we leave to the court's discretion in light of what we have said in this opinion. In ordering a remand, we do not preclude inquiry into, and consideration of, the factors we have discussed in the two preceding paragraphs. We emphasize further that, in remanding this case, "we express no opinion on the merits of [Geddie's] allegations [of intimidation]." *Gray v. United States*, 617 A.2d 521, 524 (D.C.1992).

*Remanded.*