Timothy HERBIN, Appellant,

v.

UNITED STATES, Appellee.

No. 94–CF–339.

District of Columbia Court of Appeals.

Argued June 15, 1995.
Decided Sept. 26, 1996.

Dennis M. Hart, Washington, DC, appointed by the court, for appellant.

Jocelyn F. Woolworth, Assistant United States Attorney, Washington, DC, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas C. Black, and Wyneva Johnson, Assistant United States Attorneys, were on brief, for appellee.

Before WAGNER, Chief Judge, RUIZ, Associate Judge, and GALLAGHER, Senior Judge.

RUIZ, Associate Judge:

Timothy Herbin, the appellant, brings this appeal from a Superior Court conviction of second-degree murder while armed. The appellant argues that the trial court abused its discretion in denying, without a hearing, the appellant's motion for a new trial, a motion filed on the ground that a principal government witness has recanted her trial testimony. It does not appear from the record that the trial court applied the proper test for evaluating a new trial motion predicated upon the claimed recantation of a key government witness. We therefore remand the case for further consideration of that motion.

I.

On August 7, 1993, Calvin Crossing died as a result of a stab wound the appellant inflicted during an altercation between them. At trial, the appellant admitted stabbing Crossing, but asserted the justification of self-defense. Thus, the main issues for the jury were whether the appellant had the requisite intent to commit second-degree murder while armed and whether the appellant's action was justified by the circumstances.

The government's evidence showed that in the morning of August 7, 1993, the appellant

and Phyllis Gray, a neighbor, returned to the apartment of Clyde Tyler, at 4411 First Place, N.E., where the appellant had stayed the night before with Crossing, the decedent. The appellant and Gray sat on a loveseat in Tyler's living room, and drank some vodka. The appellant and Crossing began to argue, and Crossing threatened the appellant several times.

During the argument, the appellant and Crossing began to push and shove each other. The appellant then left the living room and retrieved a knife from the kitchen. After returning from the kitchen, the appellant and Crossing began to wrestle. The appellant then stabbed Crossing. Crossing retreated to the bathroom, and then returned and collapsed in the living room. The appellant ran out of the apartment with a knife in his hand. Tyler called the Metropolitan Police Department, whose officers proceeded to the scene.

Officer Joseph Lonon entered the apartment first and found Crossing bleeding in the living room. Officer Lonon found the appellant at the entrance to the apartment, where he arrested the appellant after hearing occupants of the apartment state that the appellant had done the stabbing. The police found a knife and sweatshirt under a bush in front of the apartment building.

At trial, the government presented the testimony of three witnesses who were in the apartment at the time of the stabbing: Amos Rice, Tyler, and Gray. Rice testified that he was in the kitchen when the argument occurred. He heard the appellant tell Crossing to "leave him alone." The appellant then entered the kitchen, retrieved a knife, and returned to the living room. Rice heard some "tussling," and then he heard Crossing say, "I've been stabbed." Rice testified that the appellant subsequently left the apartment with the knife. During cross-examination, Rice testified that Crossing had threatened the appellant for weeks before the stabbing, and that Crossing was "picking on" the appellant the day of Crossing's death.

Tyler, who is severely sight-impaired, testified that he heard the appellant and Crossing arguing on the morning of the stabbing.

Furthermore, while Tyler was inside a closet of the apartment organizing it, he heard the fight, and returned to break up the altercation only to find Crossing bleeding. Tyler also testified that Crossing had threatened the appellant on occasion, and that Crossing had been previously thrown out of the apartment because of violent behavior.

Gray was the only government eyewitness to the stabbing. Gray testified that upon entering Tyler's apartment, she and the appellant drank "some vodka" and sat on the loveseat. Thereafter, Gray saw the appellant leave the living room for the kitchen. When the appellant returned from the kitchen, Crossing and the appellant began to argue. Gray stated that Crossing was talking and the appellant "just kept saying 'leave me alone, just leave me alone.'" Gray then demonstrated for the jury the mutual shoving and Crossing's subsequent stabbing. In response to cross-examination, Gray testified that she had been drinking on the morning of August 7th.

The defense presented the testimony of the appellant. The appellant testified that although he had stabbed Crossing, he had done so in self-defense. He stated, consistent with much of the government's evidence, that he had been repeatedly threatened by Crossing, that Crossing had threatened him the night before, and that the fight broke out when the appellant found Crossing searching through the appellant's belongings. The appellant admitted that he had retrieved the knife from the kitchen, but asserted that he had not intended to use it. The appellant testified that during the fight, Crossing grabbed him by the throat, but that he did not remember stabbing Crossing. The appellant then admitted to throwing the knife in some nearby bushes after leaving the building. On cross-examination, the appellant admitted that he had been drinking that morning.

On November 16, 1993, the jury returned a verdict of guilty to second-degree murder while armed. In a motion dated November 22, 1993, the appellant moved for a judgment of acquittal, or in the alternative, for a new trial. The motion for a new trial was based

upon Phyllis Gray's "intoxication." On January 11, 1994, the appellant filed a pleading entitled "Supplement to Motion for Judgment of Acquittal, or in the Alternative, Motion for New Trial." In this supplement, the appellant attached a sworn handwritten statement from Phyllis Gray, which the appellant purports to be a recantation of her testimony during trial. The statement read:

I, Phyllis Gray, swear + affirm the following statement to be a true + accurate account of what happened on August 7, 1993.

That morning of August 7, 1993, I was drinking liqu[or] and Beer, And Because of that I really didn't see what exactly happen[ed]. I just said what I said because of what other people told me.

No one has forced or threatened me to make this statement. No one has promised me anything in exchange for making this statement. I am making this statement of my own free will.

Phyllis Gray

1/6/94

On March 11, 1994, the trial court considered the appellant's motion for a new trial in the following exchange:

Court: I suppose the first thing I should deal with is the matter of the motion for the judgment of acquittal, the motion for a new trial.

Counsel: Yes, Your Honor, that's still outstanding.

Court: Based on the Court's recollection and review of the record, and the Court's recollection of the evidence, we find no basis for such a motion and would deny it.

Counsel: Just for the record, Your Honor, I did want to indicate, we would be willing to offer the Court live testimony

at a hearing on the case, if the Court wanted to consider it.

Court: We can see no need for that. We heard the trial, we evaluated and we see no basis for a new motion, for a new trial or—we look at this matter as a jury having found this gentleman guilty and he had a fair trial by—he had—he was represented by competent counsel. The Government did not—was not unfair to him, they prosecuted him and the prosecution did not take any unfair advantages.

And a jury heard it, citizens of his peers heard it and found him guilty and the Court considered it to be a fair verdict. We see no basis for a new trial and we are prepared to sentence this man at this time.

The court denied the motion and sentenced the appellant to five to fifteen years of incarceration.

## II.

### A.

■ We are asked to review the trial court's denial of the appellant's motion. We turn, first, to a determination of the legal principles that the trial court should apply in making its decision. Those principles, in turn, depend upon when the appellant filed the motion for new trial. If a motion for a new trial is made within seven days after the verdict,[1] the court may grant the motion "in the interest of justice."[2] Super. Ct.Crim. R. 33; *Godfrey v. United States*, 454 A.2d 293, 299 (D.C.1982). Under the interest of justice standard, the trial court, having presumably heard the trial evidence, is to sit as the "thirteenth juror" to determine "whether a 'fair trial requires that the [recantation] be made available to the jury.'" *Id.* (quoting *Brodie v. United States*, 111 U.S.App. D.C. 170, 173, 295 F.2d 157, 160 (1961));

---

1. The seven days are calculated excluding weekends and holidays. *(Vincent) Johnson v. United States*, 585 A.2d 766, 769 (D.C.1991).

2. Superior Court Criminal Rule 33 provides:
   The Court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice.... A motion for a new trial based on the ground of newly discov-

ered evidence may be made only before or within 2 years after final judgment, but if an appeal is pending, only on remand of the case may the Court grant the motion. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the Court may fix during the 7–day period.

*(Dwayne) Johnson v. United States*, 537 A.2d 555, 562 (D.C.1988). If the motion for a new trial is based on the recantation of a witness,[3] the trial court first determines the credibility of the recantation and that witness's trial testimony. *Godfrey, supra*, 454 A.2d at 299–300. Only if the recantation is credible need the court determine the effect that the recantation would have had on the jury. *See id.; see also Young v. United States*, 639 A.2d 92, 95 (D.C.1994) (holding that a trial court need not assess impact upon jury if recantation is incredible); *(Dwayne) Johnson, supra*, 537 A.2d at 562 (same). This court has not resolved the standard to be applied in assessing the impact upon the jury of a credible recantation,[4] and this case does not require us to do so.

█ If a motion for new trial is filed after seven days of the verdict, Rule 33 provides that the court may consider the motion only if it involves "newly discovered evidence,"[5] a stricter standard than in the "interest of justice." A defendant must meet the following criteria to obtain a new trial on this ground: "(1) the evidence must be newly discovered; (2) the moving party must show diligence in efforts to procure the new evidence; (3) the material must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such a nature that an acquittal would likely result from its use." *Byers v. United States*, 649 A.2d 279, 287 (D.C.1994) (citing *Smith v. United States*, 466 A.2d 429, 432–33 (D.C. 1983)).

The first issue to be decided in this case, thus, is whether the motion and supplement to the motion for new trial must be considered under the "interest of justice" standard or under the "newly discovered evidence" standard. Even though the government agrees that the initial motion was filed within seven days of the verdict, and the appellant argues in favor of the interest of justice standard that applies to motions filed within that period of time, there is a question whether the supplement to the motion, which attached Gray's affidavit and purported recantation, relates back to the initial motion, or if it should be considered a separate motion filed outside of seven days. This determination must first be made before the legal standard can be determined. Because we remand the case for reasons that follow, we request that the trial judge make an initial determination whether the supplement relates back to the November 22 motion for a new trial.

## B.

█ Under either the pre or post seven-day legal standard for granting a new trial, the credibility of a recantation is an important determination that may obviate the need to make further findings. *See Godfrey, supra*, 454 A.2d at 300 ("Traditionally, moreover, the trial court determines credibility of a recantation, whether the motion is based on the interest of justice or on newly discovered evidence.") (footnotes omitted). If the trial court determines that the recantation is not credible, that determination ends the inquiry. If, on the other hand, the trial court determines that it is credible, the trial court must also identify which legal standard is ap-

---

3. Under the "interest of justice" standard applicable to motions made within seven days of the verdict, the recantation need not be "newly discovered evidence." *Godfrey, supra*, 454 A.2d at 299 n. 19 (citing *Sellars v. United States*, 401 A.2d 974, 979 (D.C.1979), and *Benton v. United States*, 88 U.S.App. D.C. 158, 160, 188 F.2d 625, 627 (1951)).

4. One standard identified by this court is "whether the recantation is of such nature that it would *probably* produce an acquittal in the event of a retrial." *Nowlin v. United States*, 382 A.2d 9, 14 n. 7 (emphasis added). *See Thompson v. United States*, 88 U.S.App. D.C. 235, 236, 188 F.2d 652, 653 (1951); *Heard v. United States*, 245 A.2d 125, 126 (D.C.1968).

Another standard, still used in some federal circuits, provides:
> (a) The court is reasonably well satisfied that the testimony given by a material witness is false; (b) that without it the jury *might* have reached a different conclusion; and (c) that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir.1928). *Godfrey, supra*, 454 A.2d at 299–301, provides a more complete description of the various possible standards.

5. *Nowlin, supra* note 4, 382 A.2d at 14 n. 7.

plicable—"interest of justice" or "newly discovered evidence"—and state findings which demonstrate that it properly applied that standard.[6]

█ In this case, the trial court denied the motion for a new trial without a hearing. Although a new trial motion may require a hearing, depending on the circumstances, a trial court may in some cases deny a Rule 33 motion for a new trial without a hearing. *Geddie v. United States*, 663 A.2d 531, 534 (D.C.1995); *see Derrington v. United States*, 488 A.2d 1314, 1341 (D.C.1985); *Wilson v. United States*, 380 A.2d 1001, 1004 (D.C. 1977). *Derrington, supra*, proves instructive on this issue. In that case, the court was presented with a motion for a new trial under Rule 33 and D.C.Code § 23–110 based on a recantation by a government witness. *Id.* at 1338–39. The trial court denied the motion without a hearing. *Id.* at 1339. In denying the motion, the court specifically found that the recantation was not credible, and instead credited the witness's in-court trial testimony. *Id.* at 1339. On appeal, this court relied on the fact that the trial court had heard the testimony of the witness during trial, and held that the credibility findings regarding the proffered recantation were reasonable and supported in the record. *Id.* at 1339–40. Thus, in that case, the denial of the motion without a hearing was not an abuse of discretion. *Id.*

On the other hand, in *Geddie, supra*, the court reversed a summary denial of a motion for a new trial alleging intimidation by a codefendant and duress. In that case, the appellant had demanded a new trial because he alleged that his codefendant had threatened the appellant and his family in the event that his testimony or evidence contradicted that of his codefendant. *Geddie, supra*, 663 A.2d at 533. In light of this intimidation, the appellant contended that he had declined to take the stand and had declined to cross-examine his codefendant's witnesses. *Id.* The trial court denied the motion without stating any reasons for the denial. *Id.* at 534. This court reversed, noting that the motion presented a colorable claim for relief, that the trial court denied the motion without a hearing, and that the trial court did not state the reasons for the denial. *Id.* Because this court was unable to discern the basis for the denial of the motion, we reversed for further consideration of the motion for a new trial. *Id.*

### C.

█ We review a decision to deny a new trial only for abuse of discretion. *Geddie, supra*, 663 A.2d at 533–34. Thus, where the denial is reasonable and supported by the record, we will not reverse. *Townsend v. United States*, 549 A.2d 724, 726 (D.C.1988), *cert. denied*, 490 U.S. 1102, 109 S.Ct. 2457, 104 L.Ed.2d 1011 (1989); *Derrington, supra*, 488 A.2d at 1339. A review for abuse of discretion requires a four-step determination: (1) whether the matter at issue was in fact committed to the court's sound discretion; (2) whether the trial court recognized that it had the discretion, and if so, whether the court purported to exercise that discretion; (3) whether the record reveals sufficient facts upon which the court based its decision; and (4) whether the trial court exercised its discretion erroneously. *See Geddie, supra*, 663 A.2d at 534; *see also (James W.) Johnson v. United States*, 398 A.2d 354, 363–65 (D.C. 1979). We find that the stated reasoning of

---

**6.** It is of critical importance that trial courts create adequate records of their findings and the bases therefor. In *Atlantic Petroleum Corp. v. Jackson Oil*, 572 A.2d 469 (D.C.1990), this court considered a trial court's grant of a motion to withdraw by plaintiff's counsel. In reversing the trial court, this court spoke concerning the responsibility of the trial court to make a record sufficient to withstand appeal:

> Inevitably, the [trial court's] decision turns on the [its] evaluation of an interpersonal relationship with nuances that often may fail to be revealed in a trial transcript. Nevertheless, and precisely because of the nature of the

decision, the trial judge must assure that an adequate record is available for appellate review. The succinct finding is clearly unlikely to suffice once the appellate court is asked to review the record under the circumstances where the result is that the plaintiff's lawsuit is dismissed.

*Id.* at 472.

In contrast, in *Godfrey, supra*, 454 A.2d at 301, the trial court made five findings before determining that a witness's recantation was incredible. This court affirmed that determination as reasonable and supported by the record. *Id.*

the trial court does not satisfy the third and fourth prongs of this test.

In *(James W.) Johnson,* this court defined the appellate court's role in reviewing for abuse of discretion:

> Judicial discretion will not be reversed unless it appears that it was exercised on grounds, or for reasons, clearly untenable or to an extent clearly unreasonable.

> The components of the appellate court's review for abuse of discretion serve a dual purpose, for they not only act as measuring rods by which we may determine whether the trial court's action was proper, but, in their recital, they also indicate to the trial court the factors of which it should be aware in the course of its discretionary decision-making.

398 A.2d at 363 (internal quotations and citations omitted). The court went on to explain the fourth prong of the test for appellate review for abuse of discretion:

> To exercise its judgment in a rational and informed manner the trial court should be apprised of all relevant factors pertaining to the pending decision. *The court reviewing the decision for an abuse of discretion must determine "whether the decision maker failed to consider a relevant factor, whether he relied upon an improper factor, and whether the reasons given reasonably support the conclusion."*

*Id.* at 365 (quoting Note, *Perfecting the Partnership: Structuring the Judicial Control of Administrative Determinations of Questions of Law,* 31 VAND. L.REV. 91, 95 (1978) (other citations omitted)) (emphasis added).

Application of the incorrect legal test in disposing of a party's motion constitutes an abuse of discretion. *Oxendine v. Merrell Dow Pharmaceuticals, Inc.,* 563 A.2d 330, 334 (D.C.1989) (noting that "an abuse [of discretion] exists if the trial court applies an incorrect standard of law"), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990); *In re J.D.C.,* 594 A.2d 70, 75 (D.C. 1991) (noting that a "trial court abuses its discretion when it rests its conclusions on incorrect legal standards") (citations omitted); *see also Advanced Estimating System, Inc. v. Riney,* 77 F.3d 1322, 1325 (11th Cir.

1996) ("[A]pplication of an incorrect legal standard is an abuse of discretion...."); *Gramercy Mills, Inc. v. Wolens,* 63 F.3d 569, 573 (7th Cir.1995) ("An abuse of discretion occurs when a court applies the wrong legal standard.").

The government claims that in its ruling, the trial court impliedly determined that the recantation was incredible, and thus properly denied the motion for new trial. We cannot see how the trial court's stated reasoning comports with the government's interpretation. The court found that (1) the evidence at trial supported the conviction; (2) that the government was fair and did not take any unfair advantage during the trial; (3) that the appellant was represented by competent counsel; (4) and that the jury deliberated and rendered a "fair" verdict.

As true as the trial court's statements might be, the court does not appear either to have evaluated the proffered recantation under the proper legal standard, or to have concluded that such evaluation was unnecessary because it considered Gray's recantation to be incredible. The trial court did not mention the recantation, did not evaluate its credibility, and did not state what effect the recantation might have had on the jury. Because the trial court did not identify the correct legal standard or state findings demonstrating its application of the correct standard, we cannot agree that the trial court properly exercised its discretion.

**D.**

The error in this case requires that we remand the case to the trial judge before we can determine whether the appellant may properly stand convicted of second-degree murder. To convict an individual of second-degree murder, the government must prove each of the following elements beyond a reasonable doubt: (1) that the defendant caused the death of the decedent, and (2) that the defendant had the specific intent to kill or seriously injure the decedent, or acted in conscious disregard of an extreme risk of death or serious bodily injury to the decedent. *Comber v. United States,* 584 A.2d 26, 42 n. 19 (1990) (en banc). Malice, which is a component of both first and second-degree

murder, *Logan v. United States*, 483 A.2d 664, 671 n. 8 (D.C.1984); *Comber, supra,* 584 A.2d at 38–40, 42 n. 19, requires the absence of justification, excuse, or mitigation. *Id.* at 40–42 & n. 17.

■ This case presents a purported recantation of the only witness who saw the stabbing and whose testimony directly undermined the appellant's assertion that he acted in self-defense. A defendant is justified in the use of deadly force in self-defense if he actually and reasonably believed at the time of the incident that he was in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against the assailant. *Fersner v. United States*, 482 A.2d 387, 391 (D.C. 1984). In this case, the appellant argued that he believed himself to be in such imminent danger when Crossing grabbed him by the throat, in light of Crossing's prior threats and violent behavior. If Gray's recantation and claim that she was merely repeating the rendition of others are credible, the jury might have considered not only untrue statements but also inadmissible hearsay in reaching its conclusion that the appellant did not act in self-defense. *See Patton v. United States*, 633 A.2d 800, 813 (D.C.1993) (reversing conviction when inadmissible hearsay prejudiced trial). Because the central issue in this case was the state of mind of the defendant, this witness's testimony at trial, if her recantation is credible, may well have prejudiced the appellant's right to a fair trial. *Cf. Wilson, supra,* 380 A.2d at 1004 (remanding case where handcuffing of defendant in the presence of jurors presented possibility that defendant was denied fair trial).

## III.

■ We do not express any opinion on the legal standard applicable to the motion for new trial made in this case or the merits of the appellant's motion under such standard. We also leave to the trial court to determine, in the first instance, whether to evaluate the credibility of the recantation as a preliminary manner and whether, under the circumstances of this case, a hearing is appropriate before ruling on the motion based upon the correct legal standard. We note, however, that in this case the legal standard may be the more difficult question to resolve, and need be reached only if the trial court determines that the proffered recantation is credible.[7]

*Remanded.*

WAGNER, Chief Judge, dissenting:

The record reveals that the trial court had no power to grant appellant's motion for new trial on an "interest of justice" standard, and it did not abuse its discretion in denying the motion based on a claim of newly discovered evidence, even assuming the truth of the claimed "recantation." *See* Super. Ct.Crim. R. 33.[1] Therefore, no remand is required to dispose of the issues raised on appeal.

Rule 33 requires that any motion for new trial which is not based upon newly discovered evidence be filed within seven days of verdict or finding of guilt.[2] *Id.* This seven-

7. The appellant also claims that there was insufficient evidence to support his conviction. Viewing the evidence presented in the light most favorable to the government, as we must, we conclude that the evidence was sufficient to convict the appellant of second-degree murder. This determination is not dispositive of the appellant's claim of insufficiency, however, because a conclusive determination of evidentiary sufficiency must await the trial court's evaluation of the purported recantation by a key government witness.

1. Rule 33 provides in pertinent part that

[t]he Court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice.... A motion for a new trial based on the ground of newly discov-

ered evidence may be made only before or within 2 years after final judgment, but if an appeal is pending, only on remand of the case may the Court grant the motion. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the Court may fix during the 7-day period.

2. The rule permits such motions to be filed "within such further time as the Court may fix *during the 7-day period.*" (Emphasis added.) This aspect of the rule is not relevant here because there is no claim that the trial court enlarged the period in accordance with the rule. In addition, Super. Ct.Crim. R. 45(b), which authorizes the trial court to enlarge time limitations for some actions, specifically precludes the extension of "the time for taking any action un-

day time constraint is a jurisdictional limitation on the court's power to grant the motion. *Kimes v. United States*, 569 A.2d 104, 117 & n. 7 (D.C.1989); *United States v. DiBernardo*, 880 F.2d 1216 (11th Cir.1989); *United States v. Hall*, 854 F.2d 1269, 1272 (11th Cir.1988). While the government concedes that appellant's first motion was filed within that seven-day window, as it points out, it is not the first motion that forms the basis for appellant's claim on appeal. Appellant first raised his claim that the witness, Phyllis Gray had recanted her testimony in a motion filed well after the expiration of the seven-day period specified in Rule 33. It would be an abuse of discretion to grant the second motion under an "interest of justice" standard unless it could be brought within the limitations period set by the rule. *See DiBernardo*, 880 F.2d at 1223. Otherwise, the motion would be procedurally time-barred. *See Kimes*, 569 A.2d at 117; *United States v. Lara–Hernandez*, 588 F.2d 272, 275 (9th Cir. 1978); *United States v. Sanchez*, 917 F.Supp. 29, 33–34 (D.D.C.1996).

Only if appellant's later motion, which was filed well after the expiration of the seven-day period, relates back to the earlier motion can the "interest of justice" standard be applied to it. *See Hall, supra*, 854 F.2d at 1271; *United States v. Reyes*, 510 F.Supp. 150, 152 (D.Ariz.1981).[3] No relation-back can be found here because the second motion asserted a different ground for relief than the first. In the first motion, appellant argued that the testimony of the witness, Phyllis Gray, at the time that she testified "was

incompetent in that she was obviously intoxicated and [her testimony] therefore should have been stricken from the record." [4] In the later filed motion, appellant requested a new trial based upon the alleged recantation. Specifically, appellant claimed in the second motion that the witness Gray disclosed after trial that she had been drinking liquor and beer on the morning of the crime, August 7, and for that reason did not see exactly what happened, but reported what others had told her.[5] Since the grounds set forth in the original motion were specific and unrelated in any way to the claimed newly discovered evidence, the second motion could not relate back, and the "interest of justice" standard could not be applied. *Hall, supra*, 854 F.2d at 1271. Therefore, the stricter, newly discovered evidence standard must apply to appellant's motion. *Id.* The government argues, correctly, that appellant failed to meet that test.

There are, as the majority points out, five prerequisites for granting a new trial based on newly discovered evidence.[6] *Byers, supra* note 6, 649 A.2d at 287. The record shows that appellant failed to meet at least two of them. Specifically, the testimony at trial reveals (1) that the evidence was not newly discovered, and (2) that it was merely impeaching and cumulative. *See id.* Gray admitted at trial, as she did in her affidavit in support of appellant's motion, that she had been drinking vodka on the morning of the crime, and appellant's trial counsel cross-examined her about it.[7] Therefore, there is

---

der Rule[] . . . 33 except to the extent and under the conditions stated in [the rule]."

**3.** We have held repeatedly that we may look to federal court decisions as persuasive authority when interpreting a local rule which is identical to a federal rule. *Group Health Ass'n v. Reyes*, 672 A.2d 74, 75 n. 3 (D.C.1996); *Peoples v. Warfield & Sanford, Inc.*, 660 A.2d 397, 401 n. 3 (D.C.1995); *Cohen v. Owens & Co.*, 464 A.2d 904, 906 n. 3 (D.C.1983).

**4.** Appellant also argued in the first motion that the evidence was insufficient to convict him; that Gray's testimony was incredible and inconsistent with other witnesses; and that the government's evidence concerning the second-degree murder count was "inconsistent and equivocal."

**5.** As the government points out in its brief, there were no other eyewitnesses to the actual stabbing who could have provided Gray with an account of the events.

**6.** The prerequisites for granting a motion for new trial based on newly discovered evidence are that: (1) the evidence must be newly discovered; (2) the movant must show diligent efforts to obtain the new evidence; (3) the material must not be merely cumulative or impeaching; (4) the new evidence must be material to the issues involved; and (5) the evidence must be of a nature that acquittal would be likely if it were used. *Byers v. United States*, 649 A.2d 279, 287 (D.C.1994) (citations omitted).

**7.** In her affidavit, Gray states with regard to the claimed recantation the following:

nothing newly discovered about her drinking on the morning of the offense. The same is true with respect to her claim that she did not see "exactly what happened." During her testimony at trial, Gray indicated that she was not paying full attention to the crime, as the following excerpt from the transcript discloses:

Q: But it's fair to say that when you were in the apartment, you weren't paying attention to everything that was going on, right?

A: I didn't have to because I didn't go over there to pay attention to other people['s] business.

The purported recantation about the witness' inattention to the events surrounding the crime is another inconsistent statement much like the one she made to the grand jury which appellant's counsel used to impeach her at trial. That statement was as follows:

And then when I looked up again, the man was stabbed. With what, I don't know because I still hadn't seen no knife or whatever.

As a matter of law, the evidence proffered by appellant in support of the motion for new trial was not newly discovered, and it was cumulative and impeaching. Therefore, even assuming the truth of the witness' post-trial statement, it would not warrant a new trial applying the newly discovered evidence standard. *See Townsend v. United States,* 549 A.2d 724, 726 (D.C.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2457, 104 L.Ed.2d 1011 (1989). Accordingly, the decision of the trial court denying the motion should be affirmed.

Finally, I agree with the majority that the evidence was sufficient to support appellant's conviction. *See Earle v. United States,* 612 A.2d 1258, 1265 (D.C.1992). However, I cannot agree that "a conclusive determination of evidentiary sufficiency must await the trial court's evaluation of the purported recantation by a key government witness." Majority Op. at note 7. Appellant's claim of evidentiary insufficiency is a separate argument for

reversal, and its resolution is not dependent upon the disposition of his motion for new trial. Therefore, the matter should be resolved conclusively in this appeal.[8] *See Wright v. United States,* 513 A.2d 804, 808 & n. 6 (D.C.) (citation omitted), *cert. denied,* 479 U.S. 933, 107 S.Ct. 406, 93 L.Ed.2d 359 (1986). For the foregoing reasons, I respectfully dissent from the opinion of the court.

---

That morning of August 7, 1993, I was drinking liqu[or] and Beer, And Because of that I really didn't see what exactly happen[ed]. I just said what I said because of what other people told me.

**8.** A reversal for insufficiency of the evidence would bar any retrial. *Burks v. United States,* 437 U.S. 1, 15–17, 98 S.Ct. 2141, 2149–50, 57 L.Ed.2d 1 (1978).